## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HUBBARD-HALL INC., | : | CIVIL ACTION NO. 3:13-cv-00104-RNC |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| MONSANTO COMPANY, | : | |
| PHARMACIA CORPORATION, | : | |
| PFIZER INC., | : | |
| SOLUTIA INC., and | : | |
| JOHN DOES 1-20, | : | |
| | : | |
| Defendants. | : | DECEMBER 18, 2013 |

### DEFENDANTS' ANSWER AND AFFIRMATIVE AND OTHER DEFENSES

Come now Defendants Monsanto Company, Pharmacia Corporation, Pfizer Inc. and

Solutia, Inc. (collectively "Defendants") and Answer Plaintiff Hubbard-Hall Inc.'s ("Plaintiff")

Amended Complaint as follows:

### NATURE OF ACTION

1.       Paragraph 1 of the Amended Complaint contains an argumentative and subjective

statement purporting to characterize the legal theories underlying Plaintiff's claims for damages,

rather than substantive factual allegations.  Consequently, no answer should be required.  To the

extent an answer is deemed required, Defendants deny the allegations of Paragraph 1.

2.       Paragraph 2 of the Amended Complaint purports to characterize Plaintiff's

damages claims and does not contain substantive factual allegations.  Consequently, no answer

should be required.  To the extent an answer is deemed required, Defendants deny that Plaintiff

is entitled to any damages or relief of any kind.  Defendants lack knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2 of the Amended Complaint and therefore deny the same.

3.      Paragraph 3 of the Amended Complaint purports to characterize Plaintiff's claim for declaratory judgment and does not contain substantive factual allegations.  Consequently, no answer should be required.  To the extent an answer is deemed required, Defendants deny that Plaintiff is entitled to any declaratory judgment or other relief or damages of any kind.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 3 of the Amended Complaint and therefore deny the same.

## PARTIES

4.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Amended Complaint and therefore deny the same.

5.      Defendants admit that Monsanto Company ("New Monsanto") is a Delaware corporation with its principal place of business in St. Louis County, Missouri.

6.      Defendants state that, as of November 30, 2012, Pharmacia Corporation converted to Pharmacia, LLC.  Pharmacia LLC ("Pharmacia") is a Citizen of the States of Maine and New Jersey.  Defendants deny the remaining allegations of Paragraph 6.

7.      Defendants admit that Pfizer Inc. ("Pfizer") is a Delaware corporation with its principal place of business in New York, New York.

8.      Defendants admit that Solutia Inc. ("Solutia") is a Delaware corporation with its principal place of business in St. Louis County, Missouri.

9.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Amended Complaint and therefore deny the same.

10.     Paragraph 10 contains no substantive allegations, but instead purports to characterize and improperly lump together unrelated corporate entities and un-named alleged "John Does." Consequently, no answer should be required. To the extent an answer is deemed required, Defendants object to Plaintiff's improper pleading practice and lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 and therefore deny the same.

## JURISDICTION AND VENUE

11.     Defendants admit that this Court has jurisdiction over this action pursuant to 29 U.S.C. § 1332, that there is diversity of citizenship, and that the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

12.     Defendants admit that venue is appropriate in this Court.

## FACTUAL ALLEGATIONS

13.     Defendants admit that polychlorinated biphenyls ("PCBs") are mixtures of up to 209 congeners and that Old Monsanto, n/k/a Defendant Pharmacia LLC, acquired rights to produce PCBs from Swann Chemical Co. in approximately 1935 and produced and sold PCBs until 1977, when Old Monsanto voluntarily ceased manufacture and sale of PCBs for all purposes approximately two years before the ban on manufacture and sale took effect in 1979 under regulations promulgated pursuant to the Toxic Substances Control Act ("TSCA"). Defendants deny each and every allegation of Paragraph 13 of the Amended Complaint not specifically admitted above.

14.     Denied as stated. It is admitted that different Aroclors varied in viscosity and color.

3

15.     Defendants admit that Old Monsanto was the principal manufacturer of PCBs in the United States and the company name most recognized in the United States as associated with PCBs.  Other U.S. manufacturers of PCBs did exist, but were not well-publicized.  *See*, *e.g.*, EPA Superfund Record of Decision dated 09/18/86: re Geneva Industries (Houston Texas). Defendants deny that Old Monsanto was the "exclusive" manufacturer of PCBs in the United States, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 of the Amended Complaint and therefore deny the same.

16.     Defendants admit the allegations contained in Paragraph 16 of the Amended Complaint.

17.     Defendants deny that there are no known natural sources of PCBs in the environment.

18.     Defendants admit that some, but not all, types of PCBs have been reported by various sources as not readily breaking down in the environment.  Defendants deny each and every remaining allegation of Paragraph 18 of the Amended Complaint, including Plaintiff's conclusory and self-serving legal contentions about the alleged "useful safe life" of "the Aroclor series such as Aroclor 1254."

19.     Paragraph 19 attempts to vaguely characterize alleged positions of the Environmental Protection Agency ("EPA") and the International Agency for Research on Cancer ("IARC") concerning PCBs, without identifying any document(s) or context for these alleged hearsay positions/statements.  To the extent an answer to Plaintiff's vague and conclusory contentions about alleged positions of EPA and IARC is deemed required, Defendants deny as stated the allegations of Paragraph 19 of the Amended Complaint.  Further, if Plaintiff eventually identifies documents allegedly supporting the allegations in Paragraph 19, Defendants reserve

4

their right under Federal Rule of Evidence 106, to provide additional contents/text, documents, and/or testimony for context and completeness.

20.    Defendants deny that PCB manufacture was banned effective in 1977, although they admit that 1977 is the year when Old Monsanto voluntarily ceased the manufacture and sale of all PCBs.  Old Monsanto ceased the manufacture and sale of all PCBs used for plasticizer applications in 1970.  Defendants further state that the provisions of and regulations adopted pursuant to TSCA speak for themselves.  Defendants deny the allegations of Paragraph 20 of the Amended Complaint except as specifically admitted above.

21.    Defendants deny as stated the vague, generalized, abstract and out-of-context allegations of Paragraph 21 of the Amended Complaint.

22.    Defendants deny as stated the vague, generalized, abstract and out-of-context allegations of Paragraph 22 of the Amended Complaint.

23.    Paragraph 23 attempts to characterize generalized, vague, abstract and out-of-context alleged "studies and testing" from unidentified hearsay sources about PCBs in PCB-containing paint without identifying any document, source or context for these alleged positions/statements.  If any such "studies and testing" exist, their contents will speak for themselves.  To the extent an answer to such vague, generalized, abstract and out-of-context hearsay allegations is deemed required, Defendants deny the allegations as stated.  Further, if Plaintiff eventually identifies the alleged "studies and testing" referenced in Paragraph 23, Defendants reserve their right under Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony for context and completeness.

24.    Paragraph 24 attempts to characterize generalized, vague, abstract and out-of-context alleged "studies and testing" from unidentified hearsay sources about PCBs in paint

without identifying any document, source or context for these alleged positions/statements.  If

any such "studies and testing" exist, their contents will speak for themselves.  To the extent an

answer to such vague, generalized, abstract and out-of-context hearsay allegations is deemed

required, Defendants deny the allegations as stated.  Further, if Plaintiff eventually identifies the

alleged "studies and testing" referenced in Paragraph 24, Defendants reserve their right under

Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony

for context and completeness.

   25. Defendants deny as stated the vague, generalized, abstract and out-of-context

allegations of Paragraph 25 of the Amended Complaint.

   26. Defendants deny as stated the vague, generalized, abstract and out-of-context

allegations of Paragraph 26 of the Amended Complaint.

   27. Paragraph 27 attempts to characterize vague, generalized and abstract alleged

positions of the Agency for Toxic Substances and Disease Registry ("ATSDR") concerning

PCBs without identifying any specific document or context for Plaintiff's contentions about

ATSDR's alleged positions.  If any such document or context exists, it will speak for itself.  To

the extent an answer to such vague, generalized, abstract hearsay allegations is deemed required,

Defendants deny as stated the allegations of Paragraph 27 of the Amended Complaint.  Further,

if Plaintiff eventually identifies the document or context of the alleged positions referenced in

Paragraph 27, Defendants reserve their right under Federal Rule of Evidence 106 to provide

additional contents/text, documents, and/or testimony for context and completeness.

   28. Paragraph 28 attempts to characterize vague, generalized and abstract positions of

the ATSDR concerning PCBs without identifying any document or context for Plaintiff's

contentions about ATSDR's alleged positions.  If any such document or context exists, it will

speak for itself.  To the extent an answer to such vague, generalized, abstract hearsay allegations is deemed required, Defendants deny as stated the allegations of Paragraph 28 of the Amended Complaint. Further, if Plaintiff eventually identifies the document or context of the alleged positions referenced in Paragraph 28, Defendants reserve their right under Federal Rule of Evidence 106, to provide additional contents/text, documents and/or testimony for context and completeness.

29.     Paragraph 29 attempts to vaguely characterize alleged positions and hearsay statements of the U.S. Department of Health and Human Services ("HHS") concerning PCBs without identifying any documents or context for Plaintiff's vague and self-serving conclusory allegations concerning HHS's alleged statements/positions.  If any such documents or context exist, the contents will speak for themselves.  To the extent an answer to Plaintiff's vague, conclusory and hearsay contentions about alleged positions of HHS is deemed required, Defendants deny as stated the allegations of Paragraph 29 of the Amended Complaint.  Further, if Plaintiff eventually identifies the document or context of the alleged positions referenced in Paragraph 29, Defendants reserve their right under Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony for context and completeness.

30.     Paragraph 30 includes Plaintiff's vague and self-serving characterization or paraphrasing of various unidentified hearsay "reports".  To the extent such reports exist, the contents will speak for themselves.  Defendants admit that published studies existed concerning the potential liver effects of the fumes of heated chlorinated napthalenes in cable pullers (typically chlorinated naphthalenes alone; occasionally in blends, stated in the articles, to also contain low levels of chlorinated diphenyl).  *See*, *e.g.*, Drinker et al., *The Journal of Industrial Hygiene and Toxicology*, Vol. 19, No. 7: 283 - 311 (September 1937).  Defendants  deny that the

liver effects reported in the cited September 1937 Drinker article were due to PCBs.  Defendants

deny the allegations of Paragraph 30 of the Amended Complaint except as specifically admitted

above and, to the extent Plaintiff eventually more specifically identifies these alleged "reports",

reserve their right under Federal Rule of Evidence 106 to provide additional contents/text,

documents, and/or testimony for context and completeness.

31.     Defendants admit that the one out-of-context sentence quoted by Plaintiff in

Paragraph 31 exists in the fourth paragraph of a lengthy memo dated September 20, 1955, by Old

Monsanto's Medical Director, Dr. Kelly, in the context of Dr. Kelly's discussion of extensive

animal research sponsored by Old Monsanto and performed by Joseph F. Treon, Ph.D., and

colleagues at the Kettering Laboratory in Cincinnati, Ohio, concerning "The Toxicity of the

Vapors of Aroclor 1242 and Aroclor 1254".  The findings of these studies conducted in 1955

were presented by Dr. Treon at the 17th Annual Meeting of the American Industrial Hygiene

Association in Philadelphia on April 26, 1956 and were published in the peer reviewed

"Industrial Hygiene Quarterly" in 1956.  The studies concluded, *inter alia*, that when PCBs are

used at normal temperatures, "the hazard of their inhalation may be slight or entirely absent."  As

a result of this research, Dr. Treon published recommended safe air levels of PCBs in the

workplace, and his recommended safe levels were adopted by the American Conference of

Governmental Industrial Hygienists.  Defendants deny the allegations of Paragraph 31 except as

specifically admitted above.

32.     Paragraph 32 contains Plaintiff's vague, out-of-context attempted characterization

or paraphrase of an unidentified document.  If an answer is deemed required to such vague and

out-of-context allegations about the contents of an unidentified document not attached to the

Amended Complaint, Defendants admit that Old Monsanto's Medical Department issued in the

1950's a common sense statement that food should not be consumed in areas of plants where industrial chemicals were being manufactured or used. Defendants deny the allegations except as specifically admitted above. Further, if Plaintiff eventually identifies the document with specificity, Defendants reserve their right under Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony for context and completeness.

33.     Paragraph 33 contains Plaintiff's vague, out-of-context, attempted characterization or paraphrase of a document/"initial report"/incident. If an answer is deemed required to such vague and out-of-context allegations about the alleged contents of an unidentified document/"initial report", Defendants admit that it was reported in late 1968 that people in Japan had become ill from eating rice oil contaminated with a thermally degraded industrial heating fluid, but state that the cause of the reported illnesses was later determined to be due to the presence of polychlorinated dibenzofurans, rather than due to Japanese-manufactured PCBs. Defendants deny the allegations of Paragraph 33 except as specifically admitted above.

34.     Defendants admit that in 1969, Old Monsanto appointed an ad hoc committee to evaluate and report to management recommendations and action plans concerning the developing information on PCBs in the environment to supplement the prior research, evaluation, and action plans developed since receipt of the emerging news from Sweden about trace amounts of PCBs in the environment in late 1966/early 1967. (*See, e.g.*, Old Monsanto's November 17, 1969, 12-point action plan developed and implemented as a result of the work and recommendations of the ad hoc committee.) Defendants deny the allegations of Paragraph 34 of the Amended Complaint except as specifically admitted above.

35.     Defendants admit that the out-of-context sentences quoted by Plaintiff in Paragraph 35 exist on page 1 of a detailed 11-page draft document dated October 2, 1969.  By way of further response, those sentences were eliminated from subsequent drafts and the final committee report.  Weeks later, Old Monsanto adopted a 12-point action plan documented in meeting minutes dated November 17, 1969, and ultimately in the voluntary phase-out of PCBs beginning in 1970 for any uses other than in enclosed electrical transformers and capacitors.  The continued use of PCBs in electrical transformers and capacitors was deemed essential by the United States government to preserve the integrity of the United States electrical power grid. *See*, *e.g.*, recommendations of the United States Interdepartmental Task Force Report issued in May 1972.  Old Monsanto voluntarily ceased manufacture and sale of PCBs for all purposes in 1977 (two years before the manufacture and sale of PCBs was banned under regulations promulgated pursuant to TSCA), after electrical equipment manufacturers advised that their research and development efforts had secured replacements, albeit flammable replacements, for PCBs in transformers and capacitors.  Defendants deny the allegations of Paragraph 35 except as specifically admitted above.

36.     Defendants admit that the out-of-context sentences quoted by Plaintiff in Paragraph 36 exist on page 2 of a detailed 11-page draft document dated October 2, 1969.  By way of further response, those sentences were eliminated from subsequent drafts and the final committee report.  Weeks later, Old Monsanto adopted a 12-point action plan documented in meeting minutes dated November 17, 1969, and ultimately in the voluntary phase-out of PCBs beginning in 1970 for any uses other than in enclosed electrical transformers and capacitors.  The continued use of PCBs in electrical transformers and capacitors was deemed essential by the United States government to preserve the integrity of the United States electrical power grid.

*See*, *e.g.*, recommendations of the United States Interdepartmental Task Force Report issued in May 1972. Old Monsanto voluntarily ceased manufacture and sale of PCBs for all purposes in 1977 (two years before the manufacture and sale of PCBs was banned under regulations promulgated pursuant to TSCA), after fire safety and electrical codes were relaxed to permit the expanded use of electrical fluids that were not nonflammable, and electrical equipment manufacturers advised that their research and development efforts had secured electrical fluids that, while not nonflammable like PCBs, did comply with fire safety and electrical codes. Defendants deny the allegations of Paragraph 36 except as specifically admitted above.

37.     Defendants admit that the out-of-context sentences quoted by Plaintiff in Paragraph 37 exist on the last page of a detailed 11-page draft document dated October 2, 1969. By way of further response, those sentences were eliminated from subsequent drafts and the final committee report. Weeks later, Old Monsanto adopted a 12-point action plan documented in meeting minutes dated November 17, 1969, and ultimately in the voluntary phase-out of PCBs beginning in 1970 for any uses other than in enclosed electrical transformers and capacitors. The continued use of PCBs in electrical transformers and capacitors was deemed essential by the United States government to preserve the integrity of the United States electrical power grid. *See*, *e.g.*, recommendations of the United States Interdepartmental Task Force Report issued in May 1972. Old Monsanto voluntarily ceased manufacture and sale of PCBs for all purposes in 1977 (two years before the manufacture and sale of PCBs was banned under regulations promulgated pursuant to TSCA), after fire safety and electrical codes were relaxed to permit the expanded use of electrical fluids that were not nonflammable, and electrical equipment manufacturers advised that their research and development efforts had secured electrical fluids

that, while not nonflammable like PCBs, did comply with fire safety and electrical codes. Defendants deny the allegations of Paragraph 37 except as specifically admitted above.

38.     Paragraph 38 contains Plaintiff's vague, out-of-context, attempted characterization or paraphrase of alleged "reports". If an answer is deemed required to such vague and out-of-context allegations about the alleged contents of unidentified "reports", Defendants admit that it was reported during the early 1970s that some cows in a few states had ingested PCBs apparently contained in silo sealant, but denies that PCBs were ever marketed or recommended for use in silo sealant and further states that Old Monsanto's technical bulletins provided to plasticizer customers, including paint and coating manufacturers, disclosed that PCBs are soluble in acetic acid, which is present in sileage (a physical property that would dictate against a decision by any such manufacturer to use PCBs in a silo sealant). Defendants deny the allegations of Paragraph 38 except as specifically admitted above.

39.     Defendants admit that the out-of-context sentence quoted by Plaintiff in Paragraph 39 exists in a letter dated October 15, 1974 from the Department of Health, Education and Welfare, Center for Disease Control ("HEW/CDC") to Old Monsanto's Medical Director, Dr. Kelly, soliciting assistance from Dr. Kelly in identifying populations occupationally exposed to PCBs and potentially suitable for an epidemiological investigation, an endeavor to which Dr. Kelly and Old Monsanto provided assistance. "There is no convincing evidence that PCBs cause cancer or other chronic health effects in humans at the various levels of exposure humans have received over the years." Defendants further state that epidemiological studies of worker populations occupationally exposed to PCBs (e.g., General Electric and Westinghouse workers engaged in the manufacture of PCB-containing electrical equipment) have failed to demonstrate any consistent elevations in chronic diseases or cancers causally connected to PCBs in such

12

workers.  *See, e.g.*, Kimbrough, R., *Human Exposure to Polychlorinated Biphenyls and Health Effects:  A Critical Synopsis*, TOXICOL. REV. 2003:22(4): 217 – 233 ("There is no convincing evidence that PCBs cause cancer or other chronic health effects in humans at the various levels of exposure humans have received over the years.").  Dr. Kimbrough was the first scientist to report several decades earlier that Aroclor 1260 (a highly chlorinated PCB) caused liver cancer in one strain of laboratory rats.  Kimbrough, R., *Induction of Liver Tumors in Sherman Strain Female Rats by Polychlorinated Biphenyl Aroclor 1260*, J. NAT'L CANCER INST. 1975:55(6):1453 – 1459.  To the extent such letter exists, the contents will speak for themselves.  Defendants deny the allegations of Paragraph 39 of the Amended Complaint except as specifically admitted above.

40.    Defendants admit that the out-of-context sentence quoted by Plaintiff in Paragraph 40 exists in a letter dated December 22, 1975 from EPA Administrator Russell E. Train to Old Monsanto, but deny that PCBs pose a threat to human health.  *See, e.g.*, Kimbrough, R., *Human Exposure to Polychlorinated Biphenyls and Health Effects:  A Critical Synopsis*, TOXICOL. REV. 2003:22(4): 217 – 233 ("There is no convincing evidence that PCBs cause cancer or other chronic health effects in humans at the various levels of exposure humans have received over the years.").  Concerning alleged environmental effects of PCBs, Defendants state that promptly after the January 1976 meeting convened by Mr. Train in his letter dated December 22, 1975, Old Monsanto informed EPA and its electrical industry customers that Old Monsanto would promptly and voluntarily shut down its PCB manufacturing unit as soon as the electrical industry developed alternative (albeit flammable) dielectric fluids and that Old Monsanto's voluntary shut down of its PCB unit in fact occurred in 1977, two years before the manufacture

13

and sale of PCBs was banned under regulations promulgated pursuant to TSCA. Defendants deny the allegations of Paragraph 40 except as specifically admitted above.

41.     Defendants deny the allegations of Paragraph 41 of the Amended Complaint as stated, but admit that regulations promulgated pursuant to TSCA banning the manufacture and sale of PCBs became effective in 1979, two years after Old Monsanto voluntarily ceased the manufacture and sale of PCBs for all purposes in 1977. Defendants deny the remaining allegations of Paragraph 41 of the Amended Complaint.

42.     Defendants deny the allegations of Paragraph 42 of the Amended Complaint.

43.     Denied as stated. Defendants admit that PCBs were historically used in a wide range of industrial applications. Approximately 85% of all PCBs manufactured by Old Monsanto were used as safety fluids in electrical equipment and hydraulic and heat transfer systems. Defendants deny the allegations of Paragraph 43 except as specifically admitted above.

44.     Paragraph 44 contains Plaintiff's characterization or paraphrase of an alleged statement from EPA from a hearsay document that Plaintiff has not attached to the Amended Complaint. To the extent any such EPA statement exists, the contents will speak for themselves. If an answer is deemed required to such vague and out-of-context hearsay allegations about the alleged contents of an unidentified EPA statement, Defendants lack knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 44 of the Amended Complaint and therefore deny the same. Further, if Plaintiff eventually more specifically identifies this alleged statement, Defendants reserve their right under Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony for context and completeness.

14

45.     Defendants admit that Old Monsanto published technical bulletins distributed to sophisticated commercial manufacturers that discussed the physical properties of PCBs. Defendants admit that during World War II, the United States government utilized warships with PCB-containing coatings.  Defendants deny the allegations of Paragraph 45 not specifically admitted above.

46.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46 of the Amended Complaint and therefore deny the same.

47.     Paragraph 47 contains Plaintiff's characterization or paraphrase of an alleged statement from EPA from a hearsay document that Plaintiff has not attached to the Amended Complaint.  To the extent any such EPA statement exists, the contents will speak for themselves. If an answer is deemed required to such vague and out-of-context hearsay allegations about the alleged contents of an unidentified EPA statement, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47 of the Amended Complaint and therefore deny the same.  Further, if Plaintiff eventually more specifically identifies this alleged statement, Defendants reserve their right under Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony for context and completeness.

48.     Paragraph 48 contains Plaintiff's characterization or paraphrase of an alleged statement from EPA from a hearsay document that Plaintiff has not attached to the Amended Complaint.  To the extent any such EPA statement exists, the contents will speak for themselves. If an answer is deemed required to such vague and out-of-context hearsay allegations about the alleged contents of an unidentified EPA statement, Defendants deny that the PCB ban became effective in 1976 and lack knowledge or information sufficient to form a belief as to the truth of

the remaining allegations of Paragraph 48 of the Amended Complaint and therefore deny the same. Further, if Plaintiff eventually more specifically identifies this alleged statement, Defendants reserve their right under Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony for context and completeness.

49.     Paragraph 49 contains Plaintiff's characterization or paraphrase of an alleged statement from EPA from a hearsay document that Plaintiff has not attached to the Amended Complaint. To the extent any such EPA statement exists, the contents will speak for themselves. If an answer is deemed required to such vague and out-of-context hearsay allegations about the alleged contents of an unidentified EPA statement, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49 of the Amended Complaint and therefore deny the same. Further, if Plaintiff eventually more specifically identifies this alleged statement, Defendants reserve their right under Federal Rule of Evidence 106 to provide additional contents/text, documents, and/or testimony for context and completeness.

50.     Defendants admit that PCBs were rarely used in residential buildings and that PCBs were sometimes used in military applications including during World War II. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 50 of the Amended Complaint and therefore deny the same.

51.     Defendants deny the allegations of the first sentence of Paragraph 51 of the Amended Complaint. Defendants deny as stated the allegations of the second sentence of Paragraph 51 of the Amended Complaint.

52.     Defendants admit that there exists a March 12, 1969 Old Monsanto memo and a March 25, 1969 Old Monsanto memo that discuss Aroclor plasticizers and 1968 sales of

chlorinated biphenyls in pounds, but state that the contents of the memos will speak for themselves and deny as phrased Plaintiff's attempted paraphrase/summary of these lengthy documents.  Defendants deny the allegations of Paragraph 52 of the Amended Complaint except as specifically admitted above.

53.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53 and therefore deny the same.

54.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 54 and therefore deny the same.

55.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55 and therefore deny the same.

56.     Defendants admit that the potential existence of PCBs in paint was generally recognized in the 1990s and long before, as witnessed by articles in the popular press as well as in official government publications (e.g., *Time* and *Newsweek* magazine articles dated October 11, 1971 and the *Interdepartmental Task Force Report* dated May 1972).  Defendants  lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of  Paragraph 56 and therefore deny the same.

57.     Defendants admit that in 2009, EPA issued a press release concerning PCBs in caulk and state that the contents of such press release will speak for themselves.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of Paragraph 57 and therefore deny the same.  Defendants deny the allegations of Paragraph 57 not specifically admitted above.

58.     Defendants deny Plaintiff's self-serving conclusory allegations about "useful safe life."  As to the remaining allegations of Paragraph 58, Defendants lack knowledge or information sufficient to form a belief as to such allegations and therefore deny the same.

59.     Defendants admit that as of September 1, 1997, Pharmacia (then known as Monsanto Company) entered into a Distribution Agreement with Solutia related to the transfer of the operations, assets and liabilities of the Chemicals Business from Pharmacia (then known as Monsanto Company) to Solutia, an independent, newly-formed and publicly traded company ("the Solutia spin").  The specific terms of the transactional document underlying the Solutia spin, which has been produced in discovery herein, will speak for themselves.  Defendants deny the allegations of Paragraph 59 except as specifically admitted above.

60.     Defendants admit that the Distribution Agreement dated September 1, 1997, referenced in response to Paragraph 59 above, contains assumption and indemnification provisions.  The specific terms of this transactional document, which has been produced in discovery herein, will speak for themselves.  Defendants deny the allegations of Paragraph 60 except as specifically admitted above.

61.     Defendants admit that on December 19, 1999, Pharmacia (then known as Monsanto Company) entered into an agreement with Pharmacia & Upjohn, Inc. relating to a merger, and that on February 9, 2000, New Monsanto was incorporated in Delaware as a wholly owned subsidiary of Pharmacia (then known as Monsanto Company) under the name Monsanto Ag Company.  In connection with the merger effective March 31, 2000, Pharmacia & Upjohn, Inc. became a wholly owned subsidiary of Pharmacia (then known as Monsanto Company); Pharmacia (then known as Monsanto Company) changed its name from Monsanto Company to

Pharmacia Corporation; and New Monsanto changed its name from Monsanto Ag Company to Monsanto Company.

62.     Defendants repeat their response to the allegations of Paragraph 61 above and admit that New Monsanto and Pharmacia entered into a Separation Agreement dated September 1, 2000, and also that an initial public offering of New Monsanto's stock was completed on October 23, 2000. As of August 13, 2002, Pharmacia no longer owned any equity interest in New Monsanto, an independent publicly traded corporation. Defendants deny the allegations of Paragraph 62 except as specifically admitted above.

63.     Defendants admit that pursuant to the Separation Agreement with Pharmacia, New Monsanto agreed to indemnify Pharmacia for liabilities primarily related to the Ag Business or the Chemicals Business, and for liabilities owed by Solutia pursuant to the Distribution Agreement, to the extent that Solutia fails to pay, perform or discharge those liabilities. Defendants further state that the terms of these transactional documents will speak for themselves and deny the allegations of Paragraph 63 except as specifically admitted above.

64.     Defendants admit that in July 2002, Pharmacia, Solutia and New Monsanto amended the Distribution Agreement to provide that Solutia will indemnify New Monsanto for the same liabilities for which Solutia had agreed to indemnify Pharmacia and to clarify the parties' rights and obligations. Defendants further state that the terms of these transactional documents will speak for themselves and deny the allegations of Paragraph 64 except as specifically admitted above.

65.     Defendants admit that in 2003 Pharmacia became a wholly-owned subsidiary of Pfizer, but state that Pharmacia and Pfizer have remained separate and distinct legal entities. As of November 30, 2012, Pharmacia Corporation became Pharmacia LLC. Pharmacia LLC is a

citizen of the states of Maine and New Jersey.  Defendants deny the allegations of Paragraph 65 except as specifically admitted above.

66.     Defendants admit that in December 2003, Solutia and 14 of its U.S. subsidiaries filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code.

67.     Defendants admit that on February 17, 2004, Solutia notified Pharmacia and New Monsanto that it was disclaiming its obligation to defend pending or future litigation related to the Solutia liabilities owed under the Distribution Agreement as amended.

68.     Defendants admit that prior to and following Solutia's December 2003 bankruptcy filing, New Monsanto assumed the management of certain tort litigation, including certain PCB tort litigation, and environmental obligations in order to protect Pharmacia and itself.  Defendants deny the allegations of Paragraph 68 except as specifically admitted above.

69.     The allegations of Paragraph 69 concerning an alleged past settlement in unrelated litigation should be stricken as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f).  Consequently, no answer to Paragraph 69 should be required.  To the extent an answer is deemed required, Defendants deny as irrelevant and immaterial the allegations of Paragraph 69.  In relation to New Monsanto's financial responsibility for a judgment, if any, in this case, however, Defendants refer Plaintiff to the legal transactional documents that have been produced to Plaintiff herein, including the Settlement Agreement dated October 15, 2007 that was approved by the bankruptcy court upon Solutia's emergence from bankruptcy in February 2008, and admit that the terms of the Settlement Agreement and the Order Confirming Solutia's Fifth Amended Joint Plan of Reorganization will speak for themselves.

70.     The allegations of Paragraph 70 concerning an alleged settlement in unrelated litigation and "anticipation" about commercial insurance coverage for unrelated litigation should be stricken as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f). Consequently, no answer to Paragraph 70 should be required.  To the extent an answer is deemed required, Defendants deny as irrelevant and immaterial the allegations of Paragraph 70.  In relation to New Monsanto's financial responsibility for a judgment, if any, in this case, however, Defendants refer Plaintiff to the legal transactional documents that have been produced to Plaintiff herein, including the Settlement Agreement dated October 15, 2007 that was approved by the bankruptcy court upon Solutia's emergence from bankruptcy in February 2008, and admit that the terms of the Settlement Agreement and the Order Confirming Solutia's Fifth Amended Joint Plan of Reorganization will speak for themselves.

71.     The allegations of Paragraph 71 about alleged activities of New Monsanto at PCB remediation sites before Solutia emerged from bankruptcy in February 2008 should be stricken as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f).  Consequently, no answer to Paragraph 70 should be required.  To the extent an answer is deemed required, Defendants deny as irrelevant and immaterial the allegations of Paragraph 71.  In relation to New Monsanto's financial responsibility for a judgment, if any, in this case, however, Defendants refer Plaintiff to the legal transactional documents that have been produced to Plaintiff herein, including the Settlement Agreement dated October 15, 2007 that was approved by the bankruptcy court upon Solutia's emergence from bankruptcy in February 2008, and admit that the terms of the Settlement Agreement and the Order Confirming Solutia's Fifth Amended Joint Plan of Reorganization will speak for themselves.

72.     Defendants admit that in February 2008, Solutia completed its bankruptcy reorganization and that in connection with Solutia's plan of reorganization, Solutia, Pharmacia and New Monsanto entered into several agreements under which New Monsanto continues to manage and assume financial responsibility for certain tort litigation and environmental remediation related to the Chemicals Business, including certain tort litigation matters relating to PCBs.  Defendants deny the allegations of Paragraph 72 except as specifically admitted above.

73.     The allegations of Paragraph 73 concerning a past settlement in unrelated litigation in Montana should be stricken as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f).  Consequently, no answer to Paragraph 73 should be required.  To the extent an answer is deemed required, Defendants deny as irrelevant and immaterial the allegations of Paragraph 73.  In relation to New Monsanto's financial responsibility for a judgment, if any, in this case, Defendants refer Plaintiff to the legal transactional documents that have been produced to Plaintiff herein, including the Settlement Agreement dated October 15, 2007 that was approved by the bankruptcy court upon Solutia's emergence from bankruptcy in February 2008, and admit that the terms of the Settlement Agreement and the Order Confirming Solutia's Fifth Amended Joint Plan of Reorganization will speak for themselves.

74.     The allegations of Paragraph 74 concerning an alleged past settlement in unrelated litigation in New York should be stricken as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f).  Consequently, no answer to Paragraph 74 should be required.  To the extent an answer is deemed required, Defendants deny that Old Monsanto manufactured PCB-containing caulk and deny as irrelevant and immaterial the remaining allegations of Paragraph 74.  In relation to New Monsanto's financial responsibility for a judgment, if any, in this case, Defendants refer Plaintiff to the legal transactional documents that

22

have been produced to Plaintiff herein, including the Settlement Agreement dated October 15, 2007 that was approved by the bankruptcy court upon Solutia's emergence from bankruptcy in February 2008, and admit that the terms of the Settlement Agreement and the Order Confirming Solutia's Fifth Amended Joint Plan of Reorganization will speak for themselves.

75.     Defendants deny the allegations of Paragraph 75 of the Amended Complaint.

76.     Defendants admit the allegations of Paragraph 76 of the Amended Complaint, but deny that the statement has any relevance to this case.

77.     Defendants admit that the allegations of Paragraph 77 of the Amended Complaint, but deny that the statement has any relevance to this case.

78.     Defendants admit the allegations of Paragraph 78 of the Amended Complaint, but deny that the statement has any relevance to this case.

79.     Defendants deny the allegations of Paragraph 79 of the Amended Complaint.

80.     Defendants admit that Plaintiff is a company in the business of bulk storage of chemicals and formulation, storage and distribution of chemical products.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 80 of the Amended Complaint and therefore deny the same.

81.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81 of the Amended Complaint and therefore deny the same.

82.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Amended Complaint and therefore deny the same.

83.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Amended Complaint and therefore deny the same.

84.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the Amended Complaint and therefore deny the same.

85.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 of the Amended Complaint and therefore deny the same.

86.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the Amended Complaint and therefore deny the same.

87.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 of the Amended Complaint and therefore deny the same.

88.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 of the Amended Complaint and therefore deny the same.

89.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 of the Amended Complaint and therefore deny the same.

90.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the Amended Complaint and therefore deny the same.

91.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 of the Amended Complaint and therefore deny the same.

92.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 of the Amended Complaint and therefore deny the same.

93.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 of the Amended Complaint and therefore deny the same.

94.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 of the Amended Complaint and therefore deny the same.

95.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 of the Amended Complaint and therefore deny the same.

96.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 of the Amended Complaint and therefore deny the same.

97.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97 of the Amended Complaint and therefore deny the same.

98.     Defendants admit that TSCA and regulations promulgated under TSCA contain provisions that regulate PCBs.  Defendants further note that Old Monsanto's last sale of any PCBs potentially incorporated into commercial paint formulations by unknown but sophisticated non-party coating manufacturers occurred no later than 1970, six years prior to TSCA's enactment in 1976, seven years prior to Old Monsanto's voluntary cessation of all PCB manufacture and sale for any purpose in 1977, and nine years prior to the 1979 effective date of TSCA ban of PCB sale and manufacture for any purpose.  As to the remaining allegations of Paragraph 98, Defendants state that the provisions of TSCA and the regulations promulgated thereunder speak for themselves and deny as stated the allegations of Paragraph 98 except as specifically admitted above.

99.     Defendants state that the provisions of TSCA and the regulations promulgated thereunder speak for themselves and deny as stated the allegations of Paragraph 99.

100.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 100 of the Amended Complaint and therefore deny the same.

101.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 101 of the Amended Complaint and therefore deny the same.

102.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102 of the Amended Complaint and therefore deny the same.

103.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the  allegations of Paragraph 103 of the Amended Complaint and therefore deny the same.

104.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 of the Amended Complaint and therefore deny the same.

105.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 of the Amended Complaint and therefore deny the same.

106.    Defendants admit as stated the vague and abstract allegations of Paragraph 106 of the Amended Complaint.

107.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 of the Amended Complaint and therefore deny the same.

108.    Defendants admit as stated the vague and abstract allegations of Paragraph 108 of the Amended Complaint.

109.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 109 of the Amended Complaint and therefore deny the same.

110.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 110 of the Amended Complaint and therefore deny the same.

111.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 111 of the Amended Complaint and therefore deny the same.

112.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 112 of the Amended Complaint and therefore deny the same.

113.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 113 of the Amended Complaint and therefore deny the same.

114.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 114 of the Amended Complaint and therefore deny the same.

115.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 115 of the Amended Complaint and therefore deny the same.

116.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 116 of the Amended Complaint and therefore deny the same.

117.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 117 of the Amended Complaint and therefore deny the same.

118.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 118 of the Amended Complaint and therefore deny the same.

119.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 119 of the Amended Complaint and therefore deny the same.

120.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 120 of the Amended Complaint and therefore deny the same.

121.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 121 of the Amended Complaint and therefore deny the same.

122.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 122 of the Amended Complaint and therefore deny the same.

123.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 of the Amended Complaint and therefore deny the same.

124.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 124 of the Amended Complaint and therefore deny the same.

125.    Defendants lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 125 of the Amended Complaint and therefore deny the same.

126.    Defendants deny that Plaintiff has been damaged or that Defendants have any responsibility for Plaintiff's alleged damages.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 126 of the Amended Complaint and therefore deny the same.

127.    Defendants deny the contingent, hypothetical and speculative "loss of business revenue" damages hypothesized in Paragraph 127, and deny that Plaintiff has or will be damaged or that Defendants have any responsibility for Plaintiff's alleged damages—including alleged past, present, future, contingent, hypothetical, and/or speculative damages.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 127 of the Amended Complaint and therefore deny the same.

128.    Defendants deny the contingent, hypothetical and speculative alleged "diminution" damages hypothesized by Plaintiff in Paragraph 128, and deny that Plaintiff has been or will be damaged or that Defendants have any responsibility for Plaintiff's alleged damages—including alleged past, present, future, contingent, hypothetical, and/or speculative damages.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 128 of the Amended Complaint and therefore deny the same.

129.    Defendants deny that Plaintiff has been damaged or that Defendants have any responsibility for Plaintiff's alleged damages.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 129 of the Amended Complaint and therefore deny the same.

130.    Defendants deny the contingent, hypothetical and speculative alleged "estimated costs" hypothesized by Plaintiff in Paragraph 130, and deny that Plaintiff has been or will be damaged or that Defendants have any responsibility for Plaintiff's alleged damages—including alleged past, present, future, contingent, hypothetical, and/or speculative damages.  Otherwise, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 130 of the Amended Complaint and therefore deny the same.

131.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 131 of the Amended Complaint and therefore deny the same.

132.    Defendants deny the allegations of Paragraph 132 of the Amended Complaint as directed to Old Monsanto.  As to the allegations of Paragraph 132 directed to alleged John Does, Defendants lack knowledge or information sufficient to form a belief as to the truth of such allegations and therefore deny the same.

133.    Defendants deny the allegations of Paragraph 133 of the Amended Complaint.

## COUNT ONE
## CONNECTICUT PRODUCT LIABILITY ACT
### (CONN. GEN. STAT. §§ 52-572m, *et seq.*)

1-133.   Defendants incorporate herein by reference their responses to Paragraphs 1 through 133.

134.   Defendants deny the allegations of Paragraph 134 of the Amended Complaint.

135.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 135 of the Amended Complaint and therefore deny the same.

136.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 136 of the Amended Complaint and therefore deny the same.

137.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 137 of the Amended Complaint and therefore deny the same.

138.   Old Monsanto did not manufacture PCB-containing paint and, accordingly, Defendants deny the allegations of Paragraph 138 of the Amended Complaint.

139.   Defendants deny the allegations of Paragraph 139 of the Amended Complaint.

140.   Defendants deny the allegations of Paragraph 140 of the Amended Complaint.

141.   Defendants deny the allegations of Paragraph 141 of the Amended Complaint.

142.   Defendants deny the allegations of Paragraph 142 of the Amended Complaint.

143.   Defendants deny the allegations of Paragraph 143 of the Amended Complaint.

144.   Defendants deny the allegations of Paragraph 144 of the Amended Complaint.

145.   Defendants deny the allegations of Paragraph 145 of the Amended Complaint.

146.    Defendants deny the allegations of Paragraph 146 of the Amended Complaint.

147.    Defendants deny the allegations of Paragraph 147 of the Amended Complaint.

148.    Defendants deny the allegations of Paragraph 148 of the Amended Complaint.

149.    Defendants deny the allegations of Paragraph 149 of the Amended Complaint.

150.    Defendants deny the allegations of Paragraph 150 of the Amended Complaint.

151.    Defendants deny the allegations of Paragraph 151 of the Amended Complaint.

152.    Defendants deny the allegations of Paragraph 152 of the Amended Complaint.

153.    Defendants deny the allegations of Paragraph 153 of the Amended Complaint.

154.    Defendants deny the allegations of Paragraph 154 of the Amended Complaint.

155.    Defendants deny the allegations of Paragraph 155 of the Amended Complaint.

156.    Defendants deny the allegations of Paragraph 156 of the Amended Complaint.

157.    Defendants deny the allegations of Paragraph 157 of the Amended Complaint.

158.    Defendants deny the allegations of Paragraph 158 of the Amended Complaint.

159.    Defendants deny the allegations of Paragraph 159 of the Amended Complaint.

160.    Defendants deny the allegations of Paragraph 160 of the Amended Complaint.

161.    Defendants deny the allegations of Paragraph 161 of the Amended Complaint.

## COUNT TWO:
## CONNECTICUT UNFAIR TRADE PRACTICES ACT
## (CONN. GEN. STAT. §§ 42-110b *et seq.*)

1-133.  Plaintiff has confusingly mis-numbered the paragraphs of its Amended

Complaint, starting at Paragraph 134 in its Count Two, when its Count One purports to include

Paragraphs 134 – 161; hence Count Two should start with Paragraph 162, not Paragraph 134.

Regardless of the confusion created by Plaintiff's mis-numbering, Defendants incorporate herein

their responses to Paragraphs 1 through 161 in response to the opening Paragraph of Count Two mis-labeled "1 – 133".

134.    Defendants deny as stated the overbroad and vague allegations of the Paragraph numbered 134 of Count Two of the Amended Complaint.

135.    To the extent the allegations of the Paragraph numbered 135 in Count Two of the Amended Complaint relate to Defendants, Defendants deny the allegations.  To the extent the allegations of the Paragraph numbered 135 in Count Two of the Amended Complaint relate to Plaintiff or to non-parties, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the Paragraph numbered 135 in Count Two of the Amended Complaint and therefore deny the same.

136.    Defendants deny the allegations of the Paragraph numbered 136 in Count Two of the Amended Complaint.

137.    Defendants deny the allegations of the Paragraph numbered 137 in Count Two of the Amended Complaint.

138.    Defendants deny the allegations of the Paragraph numbered 138 in Count Two of the Amended Complaint.

139.    Defendants deny the allegations of the Paragraph numbered 139 in Count Two of the Amended Complaint.

## COUNT THREE:
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

1-133.  Plaintiff again has confusingly mis-numbered the paragraphs of its Amended Complaint, starting at Paragraph 134 in its Count Three, when its Count One purports to include Paragraphs 134 – 161; and its Count Two includes six "substantive" Paragraphs of allegations; hence Count Three should start with Paragraph 168, not Paragraph 134.  Regardless of the

confusion created by Plaintiff's mis-numbering in Counts Two and Three, Defendants incorporate herein their responses to all Paragraphs above in response to the opening Paragraph of Count Three mis-labeled "1 – 133".

134.  Defendants deny the allegations of the Paragraph numbered 134 in Count Three of the Amended Complaint.

135.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the Paragraph numbered 135 in Count Three of the Amended Complaint and therefore deny the same.

136.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the Paragraph numbered 136 in Count Three of the Amended Complaint and therefore deny the same.

137.  Defendants deny the first clause of the allegations in the Paragraph numbered 137 in Count Three of the Amended Complaint and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of the Paragraph numbered 137 in Count Three of the Amended Complaint and therefore deny the same.

138.  Defendants deny that Plaintiff has sustained damages or will sustain additional future hypothetical, contingent and/or speculative damages as alleged and deny all allegations of the Paragraph numbered 138 in Count Three of the Amended Complaint.

139.  Defendants deny the allegations of the Paragraph numbered 139 in Count Three of the Amended Complaint.

## **OTHER RESPONSE**

Defendants deny each and every allegation of the Amended Complaint not specifically admitted above.

34

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

The Amended Complaint and each count thereof fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's first claim for relief under the Connecticut Product Liability Act, General Statutes §§ 52-572m *et seq.* ("CPLA"), is barred by the statute of limitations set forth in General Statutes § 52-577c(b).

### THIRD DEFENSE

Plaintiff's first claim for relief under the CPLA is barred by the ten-year statute of repose set forth in that Act at § 52-577a(a).  It is uncontested that Old Monsanto ceased to sell PCBs to plasticizer applications in 1970, and for all purposes in 1977, and that the manufacture and sale of PCBs for all purposes was banned in the U.S. effective in 1979.  Under any of these three uncontested fact scenarios (1970, 1977, 1979), Plaintiff's CPLA claim is barred by the statute of repose.

### FOURTH DEFENSE

Plaintiff's attempt to plead the "useful safe life" exception to the ten-year statute of repose in the CPLA fails, *inter alia*, because: Plaintiff's  conclusory allegations concerning "useful safe life" do not satisfy the *Twombly/Iqbal* pleading requirements established by the United States Supreme Court.  *See Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007) (Rule 8(a) requires factual allegations sufficient "to raise a right to relief above the speculative level."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## FIFTH DEFENSE

Plaintiff's conclusory contention that PCBs allegedly have an infinite "useful safe life" is irreconcilable with Plaintiff's allegations that PCBs were "inherently defective" at the time of manufacture and/or by no later than the time manufacture and sale was banned under TSCA effective in 1979.  These contradictions render Plaintiff's product liability claim implausible, in violation of Fed. R. Civ. P. 8, *see Twombly* and *Iqbal*, *supra*, and establish the applicability of the ten-year statute of repose under the CPLA.

## SIXTH DEFENSE

Plaintiff's attempt, if any, to plead the fraudulent concealment exception to the ten-year statute of repose under the CPLA fails to satisfy the *Twombly/Iqbal* pleading standard required under Fed. R. Civ. P. 8 and also fails to satisfy the requirement of Fed. R. Civ. P. 9(b) that allegations of fraud be pleaded with particularity.

## SEVENTH DEFENSE

The federally required commencement date ("FRCD") in § 9658 of the Comprehensive Environmental Response, Compensation, and Liability Act  ("CERCLA") does not pre-empt the CPLA statute of repose.

## EIGHTH DEFENSE

The FRCD in § 9658 of CERCLA does not apply to product liability claims against manufacturers of a product.

## NINTH DEFENSE

Plaintiff has not established the requisite factual predicates for the applicability of the FRCD in § 9658 of CERCLA.

## TENTH DEFENSE

Plaintiff is barred from recovery by the "sophisticated user," "raw material supplier," "bulk supplier", "learned intermediary," and/or "component or constituent part supplier" defenses. PCB products of Old Monsanto, if any, at issue in the Amended Complaint were sold in bulk to knowledgeable, learned, and sophisticated intermediaries, who were at least as knowledgeable as Old Monsanto concerning the properties of PCBs and were in the best position to convey appropriate use, handling, and precautionary information and other warnings.

## ELEVENTH DEFENSE

Old Monsanto did not owe any duty to warn the sophisticated entities and persons who purchased PCBs, many of whom were chemical companies or employed chemists and chemical engineers.

## TWELFTH DEFENSE

To the extent Old Monsanto owed any duty to warn, as a bulk supplier it discharged that duty by providing adequate warnings to the sophisticated intermediaries who purchased PCBs and reformulated or incorporated them into new products.

## THIRTEENTH DEFENSE

Conduct is not to be determined by hindsight or by what a party subsequently learns. Old Monsanto's conduct was at all relevant times in conformity with the generally recognized state of scientific, medical and technological knowledge (state of the art) that existed at the time that it prepared, issued and distributed its safe-handling and warning materials for the PCBs and/or PCB products allegedly at issue in this litigation. Further, Old Monsanto's conduct was at all times in conformity with the state of the art existing at the time that the PCBs and/or PCB products allegedly at issue herein were designed, manufactured, tested, packaged, labeled, sold

or distributed by Old Monsanto.  Old Monsanto's conduct and activities, including its warnings, were reasonable, prudent and common in the industry and met the applicable standards.

## FOURTEENTH DEFENSE

Old Monsanto acted in accordance with relevant federal, state and local laws and regulations in effect at the time of any alleged acts or omissions.  Retroactive application of statutes, regulations and/or case law to any alleged acts or omissions by Old Monsanto is barred and/or violates the United States Constitution, and General Statutes § 55-3.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred in whole or in part by the risk/utility doctrine.  If it is determined that there was a risk inherent in the use of PCBs allegedly sold or supplied by Old Monsanto, then such risk was outweighed by the benefits of PCBs.

## SIXTEENTH DEFENSE

Plaintiff is barred from recovery under the Connecticut Unfair trade Practices Act ("CUTPA") because the CPLA is its exclusive remedy for its alleged property damages.  *See* General Statutes § 52-572n(a).

## SEVENTEENTH DEFENSE

Plaintiff is barred from recovery under CUTPA by the statute of limitations.  General Statutes § 42-110g(f).

## EIGHTEENTH DEFENSE

Defendants are not liable to Plaintiff because any damages allegedly sustained by Plaintiff are, in whole or in part, the result of Plaintiff's improper acts or omissions.  General Statutes § 52-572o.

## NINETEENTH DEFENSE

Defendants are not liable to Plaintiff because any damages allegedly sustained by Plaintiff are the result of its use of the allegedly defective product(s).  General Statutes § 52-572l.

## TWENTIETH DEFENSE

Plaintiff is barred from recovery of any economic losses under the CPLA.

## TWENTY-FIRST DEFENSE

Some or all of the damages alleged are impermissibly remote and speculative and, therefore, Plaintiff is barred from the recovery of any such alleged damages.

## TWENTY-SECOND DEFENSE

Plaintiff's claim for a Declaratory Judgment pursuant to 28 U.S.C. § 2201 seeking indemnity for costs and expenses of investigation and remediation and future actions by third parties are barred in whole or in part, *inter alia*, because they are premature, as the losses at issue have not yet accrued.

## TWENTY-THIRD DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel, waiver and laches, *inter alia*, because Plaintiff delayed for an unreasonable period of time the filing and pursuit of its claims.

## TWENTY-FOURTH DEFENSE

Defendants are not liable to Plaintiff because Plaintiff has, in whole or part, failed to mitigate any damages.

## TWENTY-FIFTH DEFENSE

Any injuries allegedly sustained by Plaintiff were produced, if at all, by an intervening, superseding cause or causes, and any alleged act or omission of Old Monsanto was not the proximate or competent producing cause of Plaintiff's alleged injuries or damages.

### TWENTY-SIXTH DEFENSE

Any alleged acts or omissions by Old Monsanto were not a substantial factor in bringing about the alleged injuries and damages for which Plaintiff seeks recovery.

### TWENTY-SEVENTH DEFENSE

On information and belief, Old Monsanto's PCBs at issue, if any, were independently and materially changed, altered and modified by John Does, over whom Old Monsanto had no control.

### TWENTY-EIGHTH DEFENSE

Plaintiff has failed to join indispensable parties.

### TWENTY-NINTH DEFENSE

Some of the existing Defendants to the lawsuit have been improperly joined.

### THIRTIETH DEFENSE

Any equitable relief sought by Plaintiff is barred because Plaintiff has an adequate remedy at law.

### THIRTY-FIRST DEFENSE

Plaintiff is barred from recovery of punitive damages under the CPLA because punitive damages are not allowed for claims brought solely for property damages under the CPLA.

### THIRTY-SECOND DEFENSE

Plaintiff's claim for punitive damages, if granted, would be grossly excessive and would violate the United States Constitution.  Defendants have not received fair notice that they could be subject to substantial punitive damages for the conduct alleged.  The punitive damages sought

by Plaintiff are greatly disproportionate to any actual damages and far exceed any civil or criminal sanctions that could be imposed for similar alleged misconduct.

## THIRTY-THIRD DEFENSE

Plaintiff's claim for punitive damages, even if permissible, would be limited under Connecticut law to litigation expenses less taxable costs in this action.

## THIRTY-FOURTH DEFENSE

The conduct and/or acts of Old Monsanto as alleged in the Amended Complaint were not and are not willful, wanton, malicious, reckless, fraudulent or done with a conscious disregard for the rights of Plaintiff and/or the safety of the public.  Nor do any of the conduct and/or acts of Old Monsanto alleged in the Amended Complaint demonstrate that Old Monsanto acted with a high degree of moral culpability.

## THIRTY-FIFTH DEFENSE

Defendants reserve the right to assert additional defenses should the investigation and discovery in this action demonstrate their applicability.

## <u>JURY TRIAL DEMAND</u>

Defendants hereby demand a trial by jury of any and all claims and defenses triable of right by a jury.


WHEREFORE, having fully answered, Defendants Monsanto Company, Pharmacia Corporation, Pfizer Inc., and Solutia Inc., respectfully pray for judgment in their favor, dismissing the entire Amended Complaint as to each of them with prejudice, and that Defendants be awarded their costs and attorneys' fees incurred herein, and for such further and additional relief as the Court may deem just and proper.

41

Respectfully submitted,

ROBINSON & COLE LLP

By: _____*/s/ Sorell E. Negro*_____
       Stephen E. Goldman (ct06224)
       E-mail: sgoldman@rc.com
       Jeffrey J. White (ct25781)
       E-mail: jwhite@rc.com
       Sorell E. Negro (ct29195)
       E-mail: snegro@rc.com
       ROBINSON & COLE LLP
       280 Trumbull Street
       Hartford, CT 06103-3597
       Telephone:  (860) 275-8237
       Facsimile:   (860) 275-8299

**Attorneys for Defendants Monsanto Company, Pharmacia Corporation (now Pharmacia LLC), Pfizer Inc., and Solutia Inc.**

42

## CERTIFICATION

This is to certify that on the 18th of December 2013, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all applicable parties by operation of the Court's electronic filing system.  A copy will also be sent by U.S. regular mail to:

Nicholas J. Harding
Emily A. Gianquinto
REID AND RIEGE, P.C.
One Financial Plaza, 21st Floor
Hartford, CT 06103
nharding@rrlawpc.com
egianquinto@rrlawpc.com

*Attorneys for Plaintiff*

_____ */s/ Sorell E. Negro* _____
Sorell E. Negro