**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HUBBARD-HALL INC., | : | CIVIL ACTION NO. 3:13-cv-00104-RNC |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| MONSANTO COMPANY, | : | |
| PHARMACIA CORPORATION, | : | |
| PFIZER INC., | : | |
| SOLUTIA INC., and | : | |
| JOHN DOES 1-20, | : | |
| | : | |
| Defendants. | : | MARCH 12, 2014 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SANCTIONS AND DISMISSAL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 4

III.  FACTS RELEVANT TO PLAINTIFF'S SPOLIATION OF EVIDENCE ...................... 6

    A.    Plaintiff Failed to Institute a Litigation Hold and Take Reasonable Steps to Preserve Its ESI .................................................................................... 6

    B.    Plaintiff Intentionally Destroyed ESI After Commencing This Lawsuit ............. 10

IV.  ARGUMENT ................................................................................................... 12

    A.    Legal Standard .................................................................................... 12

    B.    Plaintiff Violated Its Obligations to Preserve ESI ............................................ 14

        1.    Plaintiff Was Under a Preservation Obligation When It Destroyed Its Back-Up Tapes and Hard Drives and Failed to Preserve Other ESI ......................................................................................... 14

        2.    Plaintiff Destroyed and Failed to Preserve Its ESI with a "Culpable" State of Mind ........................................................................ 15

            a.    Plaintiff Knowingly Destroyed Approximately 100 Back-Up Tapes and 80 Hard Drives ........................................................ 16

            b.    Plaintiff's Failure to Implement a Litigation Hold and Take Reasonable Steps to Preserve Other ESI Is Grossly Negligent ........................................................................... 18

        3.    Plaintiff's Willful Destruction of ESI, and Gross Negligence in Failing to Preserve Other ESI, Deem the Lost Data "Relevant" and "Prejudicial" for Purposes of Discovery Sanctions ............................... 21

        4.    Even Without the Presumption, There Is Sufficient Evidence to Infer that the Destroyed Documents Are Relevant to This Case ............ 23

    C.    Plaintiff's Discovery Misconduct Warrants the Sanctions of Dismissal and Costs, Including Attorney's Fees .................................................................. 25

        1.    Plaintiff Acted Willfully and in Bad Faith in Violating Its Discovery Obligations and Is at Fault for Its Conduct ............................ 26

        2.    Lesser Sanctions Would Not Be Fair Nor an Effective Deterrent Given Plaintiff's Extreme Misconduct .................................................. 28

        3.    Plaintiff's Discovery Misconduct Began at Least 3 ½ Years Ago .......... 29

        4.    Plaintiff Was Advised Prior to Destroying Its ESI that Failure to Preserve Documents, Including ESI, Could Result in Dismissal and Monetary Sanctions ................................................................... 30

V.   CONCLUSION ................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

Agiwal v. Mid Island Mortg. Corp.,
  555 F.3d 298 (2d Cir. 2009)............................................................................ 13

Aliki Foods, LLC v. Otter Valley Foods, Inc.,
  726 F. Supp. 2d 159 (D. Conn. 2010) ...................................................... 23, 30

Bambu Sales v. Ozak Trading,
  58 F.3d 849 (2d Cir. 1995)............................................................................. 25

Byrnie v. Cromwell Bd. of Edu.,
  243 F.3d 93 (2d Cir. 2001)........................................................................ 12, 15

Chan v. Triple 8 Palace,
  2005 U.S. Dist. LEXIS 16520 (S.D.N.Y. 2005) ...................................... 16, 20

Doe v. Norwalk Cmty. College,
  248 F.R.D. 372 (D. Conn. 2007)........................................ 14, 15, 21, 22, 25, 27

Gentex Corp. v. Sutter,
  827 F. Supp. 2d 384 (M.D. Pa. 2011) ............................................................ 29

Global NAPS, Inc. v. Verizon New England Inc.,
  603 F.3d 71 (1st Cir. 2010)............................................................................ 28

Innis Arden Golf Club v. Pitney Bowes, Inc.,
  257 F.R.D. 334 (D. Conn. 2009)........................................................... 13, 14, 31

Johnson v. Waterford Hotel Group, Inc.,
  2011 U.S. Dist. LEXIS 2328 (D. Conn. 2011) ........................................ 16, 18, 22

Mali v. Fed. Ins. Co.,
  720 F.3d 387 (2d Cir. June 13, 2013) ............................................................ 13

Metro Found. Contrs., Inc. v. Arch Ins. Co.,
  2014 U.S. App. LEXIS 589 (2d Cir. Jan. 13, 2014) ................................. 25, 26, 28

NHL v. Metro. Hockey Club,
  427 U.S. 639 (1976)....................................................................................... 31

Nieves v. City of New York,
   208 F.R.D. 531 (S.D.N.Y. 2002) ............................................................................ 25, 31

Residential Funding Corp. v. DeGeorge Fin. Corp.,
   306 F.3d 99 (2d Cir. 2002) .................................................................................... *passim*

Robertson v. Doe,
   2008 U.S. Dist. LEXIS 47860 (S.D.N.Y. 2008) .......................................................... 31

Sekisui Am. Corp. v. Hart,
   945 F. Supp. 2d 494 (S.D.N.Y. Aug. 15, 2013) ..................................................... *passim*

SNET v. Global NAPS Inc.,
   624 F.3d 123 (2d Cir. 2010) ......................................................................... 14, 22, 30

Zubulake v. UBS Warburg LLC,
   220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................... 15

**Statutes**

General Statutes § 22a-133y ............................................................................................. 4

**Rules**

Fed. R. Civ. P. 37 .................................................................................................... 13, 31

## I.      INTRODUCTION

Defendants seek dismissal of Plaintiff's lawsuit and monetary sanctions[1] because: (1) Plaintiff knowingly destroyed approximately 100 back-up tapes and 80 hard drives <u>after</u> it commenced this lawsuit and <u>after</u> a letter had been sent to Plaintiff's two top executives by its litigation counsel warning Plaintiff to preserve such information; and (2) Plaintiff disregarded its counsel's advice and failed to implement a litigation hold and preserve other electronically stored information ("ESI") for a three-and-a-half-year period after anticipating litigation.

As discussed below, Plaintiff's IT Director and sole member of its IT Department, Scott Feda, testified that he was not even asked to search for electronic documents in connection with this case until November 2013 — over 3 years after the lawsuit had been filed and months after Plaintiff's counsel assured Defense counsel that a thorough search of Plaintiff's computers had been completed.  Indeed, Mr. Feda was not even aware of this litigation until the end of October 2013 and had not seen the June 2010 letter sent by the company's lawyers to Plaintiff's top executives advising the company to implement a litigation hold.  Unaware of the letter or the lawsuit, Mr. Feda, with the approval of upper management, destroyed approximately 100 back-up tapes and approximately 80 hard drives that contained information from prior to 2008.  According to Mr. Feda, the information could have gone back to the 1990s.  Making this

---

[1]      On January 15, 2014, Defendants filed a Motion for Telephonic Status Conference (Doc. 71), which has been referred to Judge Martinez.  The instant motion does not pertain to the issues raised in the Motion for Telephonic Status Conference, which are limited to Plaintiff's failure to adequately search and produce its <u>existing</u> ESI.  This Motion for Sanctions and Dismissal pertains to Plaintiff's destruction of other ESI, which directly relates to Defendants' Motion for Summary Judgment or, Alternatively, for Judgment on the Pleadings (Doc. 85), filed on February 7, 2014, in which Plaintiff's knowledge of PCB contamination on its Property is a critical issue.  During the parties' meet and confer pertaining to the existing ESI and in related correspondence, Defendants notified Plaintiff that they would be seeking relief as to the documents that were destroyed.  *See* Affidavit of Jeffrey J. White, Esq. (filed herewith).

destruction even more suspicious is that this was the **first** time that back-up tapes were destroyed at Hubbard-Hall since Mr. Feda started working at the company in 2003.

Furthermore, for over three-and-a-half years, Plaintiff did not advise all of its key employees of the company's preservation obligations as set forth in the June 2010 letter from counsel. Plaintiff has generally encouraged deleting of e-mails at the company, and it provides its employees with extremely small mailboxes, as small as possible. Even after Plaintiff anticipated and then commenced this lawsuit, Plaintiff's employees were still encouraged, and continued to have the ability, to permanently delete any ESI, including e-mails, as they saw fit. This has resulted in the destruction of an unknowable amount of ESI. For example, John Paul, Hubbard-Hall's former Regulatory Affairs Manager/Environmental Compliance Manager (a key witness given that this case concerns environmental contamination and Plaintiff's knowledge of it), testified at his deposition in October 2013 that he was not told to preserve his e-mails. As a result, he had been deleting e-mails during the course of the litigation and only had the most recent month's e-mails in his inbox in October 2013. Furthermore, only one e-mail from Plaintiff's President, Andrew Skipp, has been produced to date.

Plaintiff's knowledge of polychlorinated biphenyls ("PCBs") on its property in Waterbury is a critical issue in this case and the subject of Defendants' Motion for Summary Judgment or, Alternatively, for Judgment on the Pleadings (Doc. 85), filed on February 7, 2014. In that Motion, Defendants maintain that Plaintiff's claim under the Connecticut Product Liability Act ("CPLA") (Count I) is barred by the applicable two-year statute of limitations because the injury or damage to its property by PCBs was (1) discovered, and/or (2) in the

exercise of reasonable care should have been discovered, before June 17, 2008 (two years before Plaintiff filed the lawsuit).

Plaintiff has maintained from the outset of this lawsuit that it did not know it had PCB contamination on its property until 2008 despite having multiple environmental reports and correspondence (dating back as early as 1982) in its corporate files stating the opposite. Plaintiff's wholesale destruction of documents is particularly troubling in light of the testimony of executives of the company that they had never seen any reference to PCB contamination prior to 2008, in direct conflict with numerous reports and documents in Plaintiff's files evidencing otherwise.  The presence of e-mails and other electronic documents stating otherwise would obviously be extremely harmful to Plaintiff's case, making this destruction even more troubling. The destroyed ESI is relevant to this lawsuit in many respects, including the issue of when Plaintiff knew of the alleged harm particularly because the ESI was created during the same time period (*i.e.*, the 1990s and 2000s) when the myriad studies and environmental investigations and remediation, and related communications with DEP and others, at the Property occurred.[2]

Plaintiff was under a duty to preserve potentially relevant documents when these acts or omissions occurred.  In addition, because Plaintiff knowingly destroyed ESI, and because its failure to implement a litigation hold and take reasonable steps to preserve other ESI was at least grossly negligent, the destroyed documents are presumed relevant and prejudicial for purposes of

---

[2]    Because these documents were destroyed, Defendants did not have the benefit of reviewing and considering them in preparing their Motion for Summary Judgment on statute of limitations grounds.  Defendants believe that summary judgment should still be granted based on the evidence that Plaintiff did not destroy.  If, however, the Court denies the Motion for Summary Judgment and does not grant the instant Motion for Sanctions and Dismissal, Defendants would be forced to go to trial on the issue of when Plaintiff knew of PCB contamination on the property without the benefit of relevant documents on the subject.

discovery sanctions.  Plaintiff's case should be dismissed with prejudice as a sanction for this spoliation of evidence.

## II.    BACKGROUND

Plaintiff filed this lawsuit on June 17, 2010, seeking damages for alleged PCB contamination on its property located at 563 South Leonard Street in Waterbury (the "Property"). Plaintiff alleges that it (or its agents) purchased PCB-containing paint around 1954 and used that paint at some unspecified point to paint a structure known as the "Tank Farm Building" and other structures on the Property.  Amended Complaint (Doc. 38) at ¶¶ 132 & 135.  As set forth in Defendants' Motion for Summary Judgment or, Alternatively, for Judgment on the Pleadings, after the manufacture of PCBs was banned in 1977, Plaintiff was repeatedly told over the course of a twenty-five year period, from 1982 to 2007, by multiple environmental consultants as well as regulators, that it had PCBs on its Property—including the specific type of PCBs for which Plaintiff is claiming property damages, Aroclor 1254—"in high concentrations."  *See* Doc. 85-1 at 6-24.

Moreover, in 2000, Plaintiff represented to the Connecticut Department of Environmental Protection, now known as the Connecticut Department of Energy and Environmental Protection ("DEP"), that PCBs had been found on its Property and were a "site-specific contaminant of concern," and Plaintiff would investigate and remediate the PCB contamination as part of its work under Connecticut's Voluntary Remediation Program under General Statutes § 22a-133y. 8/8/2000 Skipp Letter to DEP (M_HHDOC001866-69) ("Exhibit A").  In addition, in 2004, a DEP RCRA Inspection Report of Plaintiff's Property concluded that soil and groundwater on Plaintiff's Property were "significantly contaminated" with PCBs.  2004 DEP RCRA Inspection

Report at p. 2 ("Exhibit B").  Later in 2004, Plaintiff notified its insurance carrier of the PCB contamination on its Property.  10/25/2004 ALTA Fax to AIG (ALTA 001084-90) ("Exhibit C").

Despite the history of PCB contamination on its Property, Plaintiff also alleges that it first "discovered" PCBs on its Property in 2008, when a transformer located on an adjacent property fell over onto the roof of Plaintiff's Tank Farm Building, releasing transformer fluid.  Doc. 38 at ¶ 88.  Following this incident, wipe samples were taken of the oil and the Tank Farm Building, and Plaintiff alleges that PCBs were found in the structures of the Tank Farm Building as well as the surrounding soil.  *See id.* at ¶¶ 93-96.  The DEP and the U.S. Environmental Protection Agency ("EPA") subsequently required Plaintiff to remediate the PCB contamination.  *Id.* at ¶¶ 104-09.

Documents produced by Plaintiff in discovery indicate that Plaintiff was discussing suing Defendants as early as March 2010.  *See* 3/15/2010 E-mail from K. Meloy (ALTA008104) ("Exhibit D").  Thereafter, on June 17, 2010, Plaintiff filed its complaint against Defendants, asserting a claim under the Connecticut Product Liability Act, a claim under the Connecticut Unfair Trade Practices Act, and a request for declaratory relief.  Although Plaintiff cannot identify the manufacturers of the paint that it claims contaminated its Property, Plaintiff has brought suit against Defendants, claiming that Monsanto Company was the sole manufacturer of PCBs in the United States before they were banned in 1977, and the PCBs themselves were defective at the time of manufacture nearly 60-70 years ago.  Doc. 38 at ¶¶ 13, 15 & 20.

### III.    FACTS RELEVANT TO PLAINTIFF'S SPOLIATION OF EVIDENCE

####  A.    <u>Plaintiff Failed to Institute a Litigation Hold and Take Reasonable Steps to Preserve Its ESI</u>

Defendants first served discovery requests on Plaintiff on May 6, 2013 and served four additional requests over the next several months.  Throughout the last ten months, Plaintiff produced relatively few e-mails in response to Defendants' discovery requests, raising concerns that Plaintiff had not been conducting thorough searches of its ESI for responsive documents. For example, only one e-mail from Plaintiff's President, Andrew Skipp, has been produced in this case to date.

In light of these concerns, Defendants sought assurances from Plaintiff that all responsive e-mails had been produced and that Plaintiff had thoroughly searched its computer systems.  *See* 8/2/13 Letter from Attorney Negro to Attorney Gianquinto, "Inspection of Hubbard-Hall's Documents and Outstanding Issues," at p. 2 (attorney communications cited herein are attached as "Exhibit E"); Ex. E, 8/2/13 Letter from Attorney Negro to Attorney Gianquinto, "Plaintiff's Responses to Defendants' First Set of Discovery Requests," at pp. 2-3.  In response, on August 15, 2013, Plaintiff's counsel assured Defense counsel that "Hubbard-Hall has produced **all of its responsive internal communications and memoranda, and has conducted a thorough search of its computer systems**."  Ex. E, 8/15/13 Letter from Attorney Gianquinto to Attorney Negro at p. 2 (emphasis added).

Defendants' reliance on these assurances has proven to be badly misplaced.  Not only has Plaintiff refused to search the back-up tapes that it did not destroy and its non-email ESI,[3] but

---

[3]      As explained in note 1, Plaintiff's refusal to adequately search its existing ESI, including the back-up tapes that it inadvertently failed to destroy in July 2010, is the subject of Defendants'

even worse, Defendants have learned that Plaintiff destroyed almost all of its back-up tapes and 80 hard drives <u>after</u> it commenced this lawsuit.  Moreover, following its commencement of this litigation, Plaintiff failed to institute a litigation hold and take reasonable steps to preserve other ESI.

On June 24, 2010, after the complaint was filed, Plaintiff's counsel sent Plaintiff's Chairman, Charles Kellogg, and Plaintiff's President, Andrew Skipp, a letter stating that "Hubbard-Hall, including its employees and agents, is obligated by law to take actions to preserve any and all information that is potentially relevant to this matter, including both paper files and electronically stored information." 6/24/10 Harding Letter at p. 1, attached as "Exhibit F." The letter also stated:

> Hubbard-Hall's preservation obligation includes, but is not limited to, a requirement to <u>immediately provide notice of this litigation hold to all employees</u> and other custodians whom may be in possession of potentially relevant information, as well as taking reasonable business-wide preservation measures such as the <u>discontinuation of all data destruction and backup tape recycling policies</u>, as further described below.

*Id.* at p. 2 (emphasis added).  Thus, as of June 2010, Plaintiff was on notice, for example, that the recycling of back-up tapes should be discontinued.

Plaintiff's counsel explained that this preservation "obligation applies even where retention would otherwise not be required by normal company document retention policies and practices[,]" and it "applies to documents of every kind, both in hard copy and electronic format[.]" *Id.*  The letter stated that the lawsuit seeks recovery for alleged damages from PCBs on the Property, and "[t]he paint containing PCBs was likely used on the Property in the 1950s

---

Motion for Telephonic Status Conference (Doc. 71), which is *sub judice* with Court (Martinez, J.).

and 1960s." *Id.* at p. 1.  Plaintiff's counsel instructed that even historical documents that could

be relevant to the suit must be preserved.  *Id.* at p. 2 ("all documents should be preserved

concerning historical operations at the site, the construction and maintenance of the buildings on

the Property, the history of chemical use and storage on the Property, suppliers of maintenance

supplies such as paint and of chemicals stored on the Property, Hubbard-Hall's purchase of the

Property, environmental or other assessments or studies of the Property and PCB contamination

on the Property are potentially relevant to this matter and must be preserved.").

     With regard to electronically stored documents, the letter from counsel stated:

> Please note that electronically stored information is fragile and can
> easily be inadvertently destroyed.  Therefore, it is urgent that
> preservation of electronically stored information be completed
> immediately.
>
> **Upon receipt of this notice, please direct your information
> technology personnel to immediately halt any standard
> electronically stored documents destruction policies, including
> any "auto-delete" functions.**  Such policies typically apply to e-
> mail systems and shared network drives, but may not be limited to
> those systems.  With regard to electronically stored information,
> the goal is to preserve all relevant information, which means that if
> an employee "deletes" an e-mail or file, that e-mail or file is
> recoverable in some sort of backup system.

*Id.* at p. 3 (emphasis in original).  Plaintiff's counsel further stated that "[t]his obligation may

also require additional reasonable preservation steps such as a discontinuation of backup tape

recycling on a company-wide basis."  *Id.* at p. 4.

     The letter emphasized:

> In conclusion, please <u>immediately</u> take all steps necessary to
> ensure the preservation of all documents in Hubbard-Hall's
> possession, custody, or control that relate in any way to the
> subjects described above. . . . <u>Failure to do so could result in</u>

> penalties against Hubbard-Hall, ranging from negative inferences
> at trial to dismissal and monetary sanctions.

*Id.* (emphasis in original).

Plaintiff inexplicably disregarded the instructions of counsel to implement a litigation hold. Despite receiving the letter, Plaintiff's Chairman and its President both failed to tell its lone IT employee of the need to preserve all potentially relevant documents and information, including ESI. Plaintiff's IT Director and sole member of its IT Department, Scott Feda, testified that he was not even made aware of this litigation until the end of October 2013—*over three years after Plaintiff brought this lawsuit*—and had not seen the June 2010 letter sent to Plaintiff's top executives until that point. Feda 12/13/13 30(b)(6) Dep. Tr. at 69 & 136-37 (excerpts attached as "Exhibit G"). Because he had not been made aware of the litigation or the letter from counsel advising the company of its duty to preserve ESI, he did not take any steps to ensure that documents were being saved.

Once Mr. Feda was made aware of the lawsuit at the end of October 2013 and the June 2010 letter, he expressed concern about not knowing previously:

> Q.      Did you have any concerns upon reviewing this letter?
> MS. GIANQUINTO: Objection.
> THE WITNESS:      Review -- yeah. I -- because it was dated so long ago, and I didn't know about it, I didn't have the ability to, you know, to save everything from an old date.

*Id.* at 138 (emphasis added). After this late notification, Mr. Feda backed up documents that were archived at that time, but Plaintiff did not take any other steps to preserve electronic data. *Id.* at 132-33 & 138.

Mr. Feda also testified that at Hubbard-Hall, with regard to electronic documents, "[p]eople are allowed to delete or add as they find necessary," and this policy was not changed

after Plaintiff contemplated or commenced the lawsuit. *Id.* at 132-35. Moreover, Hubbard-Hall encourages its employees to delete e-mails "as much as possible" to save space and provides its employees with extremely small mailboxes—"as small as possible." *Id.* at 45-46, 50-51 & 103-04.

Plaintiff did not modify the use of any computers at Hubbard-Hall or its back-up procedures in any way since bringing this lawsuit. *Id.* at 118 & 132-35. Plaintiff also failed to notify all of its executives and key custodians of its preservation obligations. Further, Plaintiff's informal policy of encouraging employees to delete as much e-mail as possible and providing extremely small mailboxes to employees made it highly likely that, by not taking steps to preserve ESI and change the status quo, potentially relevant ESI would be destroyed.[4] John Paul, Plaintiff's former Regulatory Affairs Manager/Environmental Compliance Manager, testified in October 2013 that he was not told to preserve his e-mails, and as a result, he had only the most recent month's e-mails in his inbox. *See* Paul 10/10/13 Dep. Tr. at 176-77 (excerpts attached as "Exhibit H").

### B.   Plaintiff Intentionally Destroyed ESI After Commencing This Lawsuit

At his deposition on December 13, 2013, Mr. Feda testified that Plaintiff purposely destroyed a significant number of electronic data sources in July 2010, which was after Plaintiff had filed the complaint. Mr. Feda, unaware of the June 2010 letter or the lawsuit, coordinated

---

[4]    Mr. Feda testified as follows:
Q. When you were saying before how Hubbard-Hall has a small amount of e-mail storage space per employee and encourages the employees to just delete the e-mails, is that a formal policy?
A. No, it's just always been that way. That's so -- they want me to push back a little when they need more space.
Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 50-51.

the destruction of approximately 100 of Plaintiff's back-up tapes in July 2010, and approximately 80 hard drives around the same time. Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 81-87 & 94-95.  Although Plaintiff's Chairman and its President were both aware of the lawsuit and the June 2010 letter advising them to preserve ESI, they had not advised Mr. Feda of the litigation or of Plaintiff's duties to preserve all potentially relevant information. *Id.* at 69 & 136-37.

Even though Mr. Feda did not know about the lawsuit or the need to implement a litigation hold, he did not commence the destruction of the ESI without first seeking approval from upper management.  Mr. Feda  consulted with and received approval from at least two of Plaintiff's top executives who were aware of the lawsuit—Margaret Hart, Plaintiff's Director of Administration and former Environmental Compliance Manager (who served as a 30(b)(6) witness and coordinated Plaintiff's document production in the litigation), and Molly Kellogg, Plaintiff's Executive Vice President (and daughter of Charles Kellogg).[5] *Id.* at 86.

---

[5] At his 12/13/13 30(b)(6) deposition, Mr. Feda testified as follows:
Q. Who made the decision at Hubbard-Hall to have the tapes destroyed?
A. That would have been me, yeah.
Q. Did you talk to anyone about that decision?
A. Yeah, I would have talked to either Molly or Marge Hart about it. Say, hey, I'm going to get rid of these, what do you guys think? Any use for it? And nobody had any objections.
Q. You talked to Molly Kellogg and Marge Hart before the tapes were destroyed, about having the purging done?
A. Right. They -- you know, that's -- I don't remember the conversation, but I definitely would have asked.
Q. Was there any other purging of tapes while you've worked at Hubbard-Hall, other than that time?
A. No.
Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 86.

Mr. Feda explained that Plaintiff completely destroyed approximately 100 back-up tapes with content from 2006 and earlier at the end of July 2010. *Id.* at 81-87. Mr. Feda testified that some of the tapes that were destroyed could have had data from early 2000 and the mid- or late-1990s. *Id.* at 84. Plaintiff had never previously destroyed or purged back-up tapes during Mr. Feda's tenure at the company, which extended back to 2003.[6] *Id.* at 11 & 86. Around the same time as the back-up tapes were destroyed, Plaintiff also destroyed approximately 80 hard drives that had been used in 2008 and earlier. *Id.* at 93-95. These were hard drives of desktop or laptop computers that had been used by Plaintiff's employees or executives. *Id.* at 94.

## IV.   ARGUMENT

### A.   Legal Standard

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Cromwell Bd. of Edu.*, 243 F.3d 93, 107 (2d Cir. 2001) (internal quotation marks and citation omitted). A litigant's duty to preserve electronic documents, specifically, "requires a party anticipating litigation to refrain from deleting electronically stored information ("ESI") that may be relevant to that litigation." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 497 (S.D.N.Y. Aug. 15, 2013). "Such obligation should, at this point, be quite clear—especially to the party planning to sue." *Id.*

In order to establish that sanctions should be imposed for spoliation, a party must show that: (1) "the party having control over the evidence had an obligation to preserve it at the time it

---

[6]     Mr. Feda provided a list of back-up tapes that Plaintiff still has, and he explained that Hubbard-Hall had intended to destroy all of its back-up tapes in July 2010, but some were "lost in a box" and thus "never made the cut." *Id.* at 85.

was destroyed;" (2) the non-moving party acted culpably in losing or destroying the evidence; and (3) the evidence would have been relevant to the party's claims or defenses. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). "This duty may attach not only once legal proceedings have begun, but also when a party should have known that the evidence may be relevant to *future* litigation." *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 339 (D. Conn. 2009) (internal quotation marks and citation omitted). Significantly, "[c]ourts must take care not to 'hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.'" *Residential Funding Corp.*, 306 F.3d at 109 (citation omitted).

Federal Rule of Civil Procedure 37 "'authorizes a wide range of sanctions for discovery abuses.'" *Sekisui*, 945 F. Supp. at 502-03 (quoting *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir. June 13, 2013)). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp.*, 306 F.3d at 106-07. In determining what sanctions are appropriate, including the sanction of dismissal, courts consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks and citation omitted). "[T]hese factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for

13

us to conclude that those sanctions were within the court's discretion." *SNET v. Global NAPS Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

**B.**     **Plaintiff Violated Its Obligations to Preserve ESI**

Plaintiff violated its duties to preserve evidence potentially relevant to this litigation by: (1) knowingly destroying approximately 100 back-up tapes and 80 hard drives after it commenced this lawsuit and after a letter warning it of the consequences of doing so was sent by its legal counsel; and (2) failing to institute a litigation hold and take reasonable steps to preserve other ESI for three-and-a-half years after anticipating litigation.

**1.**     Plaintiff Was Under a Preservation Obligation When It Destroyed Its Back-Up Tapes and Hard Drives and Failed to Preserve Other ESI

"[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 339 (D. Conn. 2009) (internal quotation marks and citation omitted).  Thus, this preservation obligation began as soon as Plaintiff anticipated litigation. *See Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 377 (D. Conn. 2007) (obligation to preserve evidence arises when a party had notice that, evidence, "including e-mails and hard drives," may be relevant to litigation, or to future litigation, and may arise even before the complaint is filed).

Plaintiff filed its complaint on June 17, 2010, and it had discussed suing Monsanto at least as early as March 2010.  Ex. D.  Therefore, at least by March 2010, Plaintiff was obligated to preserve all information and documents potentially relevant to this lawsuit, including ESI.  *See id.*; *Innis Arden Golf Club*, 257 F.R.D. at 339.

Furthermore, this is not a case where back-up tapes were recycled due to some company policy.[7]  Mr. Feda testified that Plaintiff did not have a rotation cycle of back-up tapes, and the systematic destruction of the back-up tapes in July 2010 was a one-time event.  Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 86 & 134.  In fact, Plaintiff does not have any policy regarding the destruction of ESI.  *Id.* at 135.  Moreover, even leaving aside the back-up tapes, there is no explanation for Plaintiff's destruction of over 80 hard drives, which came from the computers used by company executives and employees in 2008 and earlier.  *Id.* at 93-94.

### 2.   Plaintiff Destroyed and Failed to Preserve Its ESI with a "Culpable" State of Mind

"[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to breach a duty to preserve it, or *negligently*.'"  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 109 (2d Cir. 2001)) (brackets omitted).  Thus, "a culpable state of mind is established by ordinary negligence," *Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 379 (D. Conn. 2007), and "[i]t follows that gross negligence also satisfies the culpability requirement." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 503 (S.D.N.Y. Aug. 15, 2013).  Moreover, "[o]nce the duty to preserve attaches, any destruction of documents is, at a

---

[7]      Although some courts have held that the "litigation hold does not apply to inaccessible backup tapes (*e.g.*, those typically maintained solely for the purpose of disaster recovery), which may continue to be recycled on the schedule set forth in the company's policy[,]" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (emphasis added), that exception does not apply here.  The tapes were not being maintained solely for disaster recovery and the Plaintiff did not have a policy of recycling back-up tapes.  Furthermore, Mr. Feda testified that at least some of the back-up tapes were accessible, as he would "run the tape through a program and [he] brought the data back out and restored it" when he was asked in the past to restore information that had been deleted or was missing.  Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 88.

minimum, negligent." *Johnson v. Waterford Hotel Group, Inc.*, 2011 U.S. Dist. LEXIS 2328, at *6 (D. Conn. 2011) (internal quotation marks and citation omitted).

**a.    Plaintiff Knowingly Destroyed Approximately 100 Back-Up Tapes and 80 Hard Drives**

Plaintiff's Chairman, Mr. Kellogg, and its President, Mr. Skipp, disregarded the advice given by their counsel and violated their legal obligations by not informing Mr. Feda of Plaintiff's lawsuit or of Plaintiff's preservation obligations.  As a result of this failure, Mr. Feda purposely destroyed approximately 100 back-up tapes in July 2010, a month after Plaintiff filed the lawsuit, and several months after Plaintiff's executives, including Mr. Kellogg, had discussed suing Defendants.  *See* Ex. D.  Mr. Feda destroyed approximately 80 hard drives around the same time.  Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 93-95.  This was no accident.  The decision to destroy the tapes and hard drives was intentional; thus, Plaintiff acted willfully and with a culpable state of mind for purposes of spoliation. *Sekisui*, 945 F. Supp. 2d at 504 ("[T]he intentional destruction of relevant records, either paper or electronic, after the duty to preserve has attached, is willful.") (internal quotation marks and citation omitted).

The culpability test does not require that the ESI be destroyed in bad faith or with the knowledge that a duty to preserve is being violated; mere negligence satisfies the "culpable state of mind" requirement. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002); *Sekisui*, 945 F. Supp. 2d at 506 ("the law does not require a finding of malevolence to constitute willfulness in the context of spoliation"); *Chan v. Triple 8 Palace*, 2005 U.S. Dist. LEXIS 16520, at *18-20 (S.D.N.Y. 2005) ("defendants' conduct demonstrates a sufficiently culpable state of mind to warrant sanctions" where defendants failed to inform their employees of the need to preserve potentially relevant evidence so they "systematically destroyed evidence

16

because they had never been informed of their obligation to suspend normal document destruction policies").

Here, Plaintiff destroyed the back-up tapes with the knowledge and approval of top executives who were aware of Plaintiff's lawsuit against Defendants, making the violation even more flagrant. After Mr. Feda discussed destroying the tapes with two of Plaintiff's top executives who were aware of the lawsuit, and "nobody had any objections[,]" Mr. Feda arranged for a third party to grind up and completely destroy the tapes. Ex. G, Feda 12/13/13 30(b)(6) Depo. Tr. at 86 & 92-93. Mr. Feda testified that he would not have made the decision to destroy the back-up tapes without first discussing it with Ms. Kellogg and Ms. Hart. *Id.* at 86; *see Sekisui*, 945 F. Supp. 2d at 507 (overturning magistrate judge's finding that the destruction of ESI was not willful because bad faith was not shown, because this conclusion was "clearly erroneous"; destruction of ESI was intentional where it occurred at the direction of an employee "after the duty to preserve had attached" and therefore was done with a culpable state of mind; moreover, "such direction was given with *at least* the knowledge of [the company's] then-President, Kevin Morrissey, if not his outright approval.").

In short, Plaintiff's intentional destruction of the 100 back-up tapes and 80 hard drives was willful, and Plaintiff thus had the requisite culpable state of mind. *See Sekisui*, 945 F. Supp. 2d at 505-06 (because the ESI "was destroyed at the direct request of an ADI employee after the duty to preserve had attached and the law does not require a finding of malevolence to constitute willfulness in the context of spoliation," finding that the "ESI was willfully destroyed"). Indeed, as Judge Scheindlin (the author of the *Zubulake* decisions) recently held, "even a good faith explanation for the willful destruction of ESI when the duty to preserve has attached does not

alter the finding of willfulness." *Id.* at 507 (emphasis added); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).

> **b.**   **Plaintiff's Failure to Implement a Litigation Hold and Take Reasonable Steps to Preserve Other ESI Is Grossly Negligent**

As a separate basis for dismissal, Plaintiff was also grossly negligent for failing to implement a litigation hold and take reasonable steps, for over three-and-a-half years after anticipating this litigation, to preserve other potentially relevant ESI. *See Johnson v. Waterford Hotel Group, Inc.*, 2011 U.S. Dist. LEXIS 2328, at *6 (D. Conn. 2011) ("Gross negligence 'differs from ordinary negligence only in degree, and not in kind,' and has been described as a 'failure to exercise even that care which a careless person would use.'") (citation omitted); *Sekisui*, 945 F. Supp. 2d at 507 (plaintiff's failure to institute a litigation hold until fifteen months after issuing a Notice of Claim to defendants, and taking another sixth months to notify its IT vendor of its preservation obligations, was grossly negligent; "[s]uch failure is inexcusable given that Sekisui is the plaintiff in this action and, as such, had full knowledge of the possibility of future litigation.").

Plaintiff inexcusably failed to timely notify all of its executives and key custodians, or its IT Director and sole member of its IT Department, of its preservation obligations. As explained above, the June 24, 2010 letter was sent to Plaintiff's Chairman, Charles Kellogg, and Plaintiff's President, Andrew Skipp. Ex. F. The letter specifically instructed Plaintiff to "**immediately** provide notice of this litigation hold to all employees and other custodians whom may be in possession of potentially relevant information[.]" *Id.* at p. 2 (emphasis added). Plaintiff failed to do so, as evidenced by the fact that neither its IT Director, Mr. Feda, nor its former Environmental Compliance Manager, Mr. Paul, a key custodian in this case, were aware of the

obligation to implement a litigation hold as of October 2013.  Ex. H, Paul 10/10/13 Dep. Tr. at

176; Ex. G, Feda 12/13/13 Dep. Tr. at 69 & 136.

   Nonetheless, in the parties' 26(f) Planning Report, filed on April 12, 2013, Plaintiff

certified that it had in place a litigation hold for all potentially relevant documents, including

ESI:

> All parties certify that they have in place litigation holds adequate
> to ensure the preservation of all relevant documents, including ESI,
> for the duration of this dispute. Those holds include the suspension
> of any auto-delete function that may attach to the parties' e-mail
> and/or document management systems. Any potentially relevant
> information that is currently stored on backup tapes or the like will
> be preserved in such form for the duration of this dispute.

Report of Fed. R. Civ. P. 26(f) Planning Meeting, April 12, 2013 (Doc. 22), at 10.  Even though

Plaintiff made this certification to the Court, Plaintiff still had not informed its IT Department

and IT Manager, Scott Feda, of Plaintiff's lawsuit or preservation obligation.  Ex. G, Feda

12/13/13 30(b)(6) Dep. Tr. at 69 & 136.  Plaintiff also failed to notify all of its key custodians

and executives of its preservation obligations, as Mr. Paul testified on October 10, 2013 that he

had not been informed of Plaintiff's preservation obligation or instructed not to delete potentially

relevant ESI.  Ex. H, Paul 10/10/13 Dep. Tr. at 176.  Six months after Plaintiff certified to the

above statements, Mr. Kellogg and Mr. Skipp still had not made Mr. Paul and Mr. Feda aware of

Plaintiff's preservation obligations. Id.; Ex. G, Feda 12/13/13 Dep. Tr. at 69 & 136.  In fact, Mr.

Feda was not aware of Plaintiff advising any employees about its preservation obligations.  Ex.

G, Feda 12/13/13 30(b)(6) Dep. Tr. at 141.

   Because Mr. Kellogg and Mr. Skipp did not inform Mr. Feda of Plaintiff's duties to

preserve all potentially relevant documents, Mr. Feda did not take any action to preserve

Plaintiff's ESI, including making any changes to Plaintiff's document destruction or back-up policies or changes to any of Plaintiff's computers or computer systems. *Id.* at 118 & 132-35. As a result, every employee at the company continued to have the ability to delete e-mails for over three years after the lawsuit had been filed, resulting in the destruction of ESI, as evidenced by the lack of e-mail production made by Plaintiff to date. *Id.* at 133 (testifying that at Hubbard-Hall, "[p]eople are allowed to delete or add as they find necessary") & 135; see also Ex. H, Paul 10/10/13 Dep. Tr. at 176 (testifying that he was never told to preserve his e-mails). Moreover, not taking any steps to preserve ESI was highly likely to result in the destruction of potentially relevant documents at Hubbard-Hall, where employees have always been encouraged to delete as many e-mails as possible and are given extremely small mailboxes to save space. Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 45-46, 50-51 & 103-04.

Such failure to take even simple steps toward preserving its ESI, even those explicitly set forth in the June 2010 letter from counsel, for three-and-a-half years after contemplating this lawsuit, constitutes at least gross negligence. This case resembles the facts in *Sekisui*, where the plaintiff in that case "did not institute a litigation hold until more than fifteen months after sending a Notice of Claim" to the defendants, and in the meantime, the plaintiff permanently deleted e-mail files. *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 498 (S.D.N.Y. Aug. 15, 2013). In addition, the plaintiff took "another six months [after the litigation hold was issued] to notify its IT vendor—*i.e.*, the company responsible for actually preserving the relevant documents—of that duty to preserve." *Id.* at 507. Judge Scheindlin held that this "failure to meet even the most basic document preservation obligations constitutes gross negligence." *Id.* at 508; *see also Chan v. Triple 8 Palace*, 2005 U.S. Dist. LEXIS 16520, at *18-20 (S.D.N.Y. 2005)

(where defendants failed to inform their employees of the need to preserve potentially relevant evidence so the employees "systematically destroyed evidence because they had never been informed of their obligation to suspend normal document destruction policies," the court found the "defendants' conduct demonstrates a sufficiently culpable state of mind to warrant sanctions").

Similarly, here, Plaintiff's failure to implement a litigation hold for <u>years</u> and to notify the person in charge of its computer systems and ESI of Plaintiff's lawsuit and preservation obligations, was, at a minimum, grossly negligent (if not willful). *See Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 379-80 (D. Conn. 2007) (finding "the defendants' failure to place a litigation hold and to preserve emails and hard drives relevant to Doe's allegations in this case to be at least grossly negligent, if not reckless[]" where "there [wa]s no evidence that the defendants did anything to stop the routine destruction" of ESI after the obligation to preserve arose); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (culpable state of mind requirement for spoliation satisfied by mere negligence).

3.   <u>Plaintiff's Willful Destruction of ESI, and Gross Negligence in Failing to Preserve Other ESI, Deem the Lost Data "Relevant" and "Prejudicial" for Purposes of Discovery Sanctions</u>

"[T]o establish the third prong of a spoliation of evidence claim, that the destroyed evidence is 'relevant' to a party's claims, that party 'must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Doe*, 248 F.R.D. at 380 (quoting *Residential Funding Corp.*, 306 F.3d at 109). "Yet courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or

unavailable evidence, because doing so . . . would allow parties who have destroyed evidence to profit from that destruction." *Sekisui*, 945 F. Supp. 2d at 504; *see Doe*, 248 F.R.D. at 380-81. "When evidence is destroyed willfully, the destruction alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Sekisui*, 945 F. Supp. 2d at 504 (internal quotation marks and citation omitted). In fact, gross negligence alone can be sufficient "to support a finding that the evidence was unfavorable to the grossly negligent party." *Id.*; *Doe*, 248 F.R.D. at 381 (where the non-movant's actions are even grossly negligent, "no other proof of relevance is necessary").

Because Plaintiff's destruction of its back-up tapes and hard drives was willful, *supra* at 16-18, and/or because Plaintiff was grossly negligent in failing to institute a litigation hold and take steps to preserve other ESI since this lawsuit began, *supra* at 18-21, the court may presume that the destroyed documents are relevant to this litigation. *See Sekisui*, 945 F. Supp. 2d at 508 ("When evidence is destroyed intentionally, such destruction is sufficient evidence from which to conclude that the missing evidence was unfavorable to that party. As such, once willfulness is established, no burden is imposed on the innocent party to point to now-destroyed evidence which is no longer available *because the other party destroyed it*."); *see also SNET v. Global NAPS Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) ("while the district court concluded that the Global entities engaged in the *willful* destruction of evidence, even the simple failure to produce evidence in a timely manner in and of itself can support an inference that the evidence withheld would be unfavorable to the noncompliant party."); *Johnson v. Waterford Hotel Group, Inc.*, 2011 U.S. Dist. LEXIS 2328, at *11 (D. Conn. 2011) (holding that because the plaintiff acted with gross negligence, relevance may be presumed).

Under such circumstances, prejudice to Defendants is also presumed:

> When evidence is destroyed willfully or through gross negligence, prejudice to the innocent party may be presumed because that party is "deprived of what [the court] can assume would have been evidence relevant to [the innocent party's claims or defenses]." That is, prejudice is presumed precisely because relevant evidence, *i.e.*, evidence presumed to be unfavorable to the spoliating party, has been intentionally destroyed and is no longer available to the innocent party.

*Sekisui*, 945 F. Supp. 2d at 504-05 (citations omitted) (brackets in original).[8]  In order words, Plaintiff "is unable to rebut the presumption of prejudice because an unknowable amount of ESI of [defendant and defendant's employees], and potentially others, was permanently destroyed and remains irretrievable." *Id.* at 509.

4.       Even Without the Presumption, There Is Sufficient Evidence to Infer that the Destroyed Documents Are Relevant to This Case

Regardless of the presumption of relevance, there is sufficient evidence to infer that the destroyed data sources are relevant to this case, as they contained electronic documents created by Plaintiff's employees and executives during the 1990s and 2000s when the myriad studies and environmental investigations and remediation were taking place at the Property, and the corresponding communications with DEP and others occurred.  As explained above, the critical issue in Defendants' Motion for Summary Judgment (Doc. 85) on statutes of limitations grounds is Plaintiff's knowledge of PCB contamination on its Property prior to 2008.  Mr. Feda testified on behalf of Plaintiff that the destroyed back-up tapes had content from 2006 and earlier.  Ex. G, Feda 12/13/13 30(b)(6) Dep. Tr. at 81-87.   He also stated that some of the tapes that were

---

[8]       Although prejudice is presumed, "a finding of prejudice is not necessary for the imposition of sanctions under Rule 37[.]"  *Aliki Foods, LLC v. Otter Valley Foods, Inc.*, 726 F. Supp. 2d 159, 180 (D. Conn. 2010).

destroyed could have had data from early 2000 and the mid- or late-1990s.  *Id.* at 84.  He further testified that Plaintiff's back-up tapes, other than the cleaning tapes, could have contained electronic documents such as e-mails created by Plaintiff's employees and executives.  *Id.* at 158.

In addition, he stated that the 80 hard drives that were destroyed had been used in 2008 and earlier.  Further, these were hard drives of desktop or laptop computers that had been used by Plaintiff's employees or executives.  *Id.* at 94.

Thus, there is sufficient evidence to infer that the back-up tapes and hard drives contained relevant information from Plaintiff's computer systems during time periods that are relevant to this case.  Plaintiff has maintained from the outset of this lawsuit that it did not know that it had PCB contamination on its property until 2008 despite having multiple environmental reports and correspondence (dating back as early as 1982) in its corporate files demonstrating the opposite.  Plaintiff's wholesale destruction of documents is particularly troubling in light of the testimony of executives of the company that they had never seen any reference to PCB contamination prior to 2008.  The presence of e-mails and other electronic documents stating otherwise would obviously be extremely harmful to Plaintiff's case.

Finally, even leaving aside the statute of limitations issue, Plaintiff has allowed its employees and executives to delete e-mails for a three-year period during which it is undisputed that significant discussions took place between Plaintiff, its consultants, and regulatory authorities concerning topics that are relevant to this case including Plaintiff's alleged damages, contamination on its Property, remediation plans, etc.  Such evidence is relevant to this case, and Defendants have been deprived the opportunity of reviewing that ESI.

**C.**   **Plaintiff's Discovery Misconduct Warrants the Sanctions of Dismissal and Costs, Including Attorney's Fees**

"'[T]he determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, . . . and is assessed on a case-by-case basis.'" *Doe v. Norwalk Cmty. College*, 248 F.R.D. 372, 375-76 (D. Conn. 2007) (citation omitted).  "[A] sanction should '(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Metro Found. Contrs., Inc. v. Arch Ins. Co.*, 2014 U.S. App. LEXIS 589, at *4 (2d Cir. Jan. 13, 2014) (citation omitted).

The Second Circuit has considered various factors when deciding whether to grant default judgment as a sanction, including:  (1) the willfulness of the non-compliant party or the reason for noncompliance, (2) the efficacy of lesser sanctions, (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of his or her non-compliance. *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002); *see also Bambu Sales v. Ozak Trading*, 58 F.3d 849, 852-54 (2d Cir. 1995) (affirming finding of default judgment as a sanction); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) ("discovery sanctions . . . may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence").  Here, consideration of these four factors militates in favor of entering default judgment against Plaintiff.

1.    Plaintiff Acted Willfully and in Bad Faith in Violating Its Discovery
        Obligations and Is at Fault for Its Conduct

"'Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party.'" *Metro Found. Contrs.*, 2014 U.S. App. LEXIS 589 at *4 (citation omitted). As explained above, Plaintiff's destruction of approximately 100 back-up tapes and 80 hard drives after Plaintiff commenced litigation, and several months after Plaintiff contemplated suing Defendants, was done knowingly and purposely and, therefore, must be considered to be willful. *See supra* at 16-18. Accordingly, dismissal is an appropriate sanction. *See Metro Found. Contrs.*, 2014 U.S. App. LEXIS 589 at *4 (affirming district court's dismissal of plaintiff's claims where district court had found plaintiff's discovery misconduct "willful"; explaining that "'[d]ismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party.'").

Moreover, although a finding of bad faith in addition to willfulness is not required, there is evidence to support such a finding, as Plaintiff's destruction of ESI and failure to implement a litigation hold went on for a period of years while Plaintiff was representing to the Court and to the Defendants that:  (1) it had a litigation hold in place that was "adequate to ensure the preservation of all relevant documents, including ESI"; (2) any potentially relevant information "stored on backup tapes or the like" would be preserved "in such form" for the duration of the dispute; and (3) a "thorough search of its computer systems" had been completed in August 2013 (*i.e.*, before its IT Director was even told about the lawsuit or the need to implement a hold). *See* Doc. 22 at 10; Ex. E.

Plaintiff is also at fault for its discovery violations.  In addition to its intentional destruction of a substantial number of electronic data sources, Plaintiff was at least grossly

negligent in failing to preserve other ESI.  As explained above, *see supra* at 8-9, Plaintiff's Chairman and its President were advised in June 2010 that Plaintiff must preserve all potentially relevant information, including ESI, and specifically warned that failure to do so could result in sanctions, including dismissal.  Ex. F at 2-4.  Plaintiff brought this lawsuit and received this advice from its counsel, yet it disregarded the advice and intentionally destroyed its back-up tapes and hard drives along with failing to notify all of its executives and key custodians in a timely manner about its preservation obligations.  Plaintiff failed to notify its IT Director and sole employee of its IT Department of this litigation or Plaintiff's related preservation obligations until the end of October 2013—over three years after filing the lawsuit.

Further, Plaintiff did not implement reasonable policies or practices to preserve ESI in an effort to meet is preservation obligations.  Particularly in light of Hubbard-Hall's encouragement of the regular deleting of e-mails at the company, not taking steps to preserve ESI would be extremely likely to result in the destruction of potentially relevant documents.  Such blatant disregard for preserving potentially relevant electronic documents over three-and-a-half years after anticipating this lawsuit constitutes, at least, gross negligence, particularly in light of Mr. Kellogg's (Chairman of Plaintiff) and Mr. Skipp's (President of Plaintiff) knowledge of the lawsuit, brought by Plaintiff, and the June 2010 letter from counsel advising Plaintiff to institute a litigation hold.  *See Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507-08 (S.D.N.Y. Aug. 15, 2013) (where plaintiff failed to issue a litigation hold for fifteen months and took another six months after issuing the hold to notify its IT vendor of its preservation obligations, and noting that the noncomplying party was the *plaintiff* "and, as such, had full knowledge of the possibility

of future litigation[,]" finding that plaintiff's "failure to meet even the most basic document preservation obligations constitutes gross negligence").

Given Plaintiff's willful destruction of ESI, and gross negligence in failing to implement the litigation hold throughout the duration of this lawsuit, dismissal is appropriate. *Metro Found. Contrs.*, 2014 U.S. App. LEXIS 589 at *4; *Global NAPS, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 93-94 (1st Cir. 2010).

> ## 2. Lesser Sanctions Would Not Be Fair Nor an Effective Deterrent Given Plaintiff's Extreme Misconduct

Second, lesser sanctions would not level the playing field in this case nor would they likely serve as an effective deterrent. Here, Plaintiff has put its knowledge of PCBs on its Property directly at issue, as virtually all of the executives deny recalling having been repeatedly told over the course of twenty-five years of PCB findings on its Property. Plaintiff's knowledge of the PCB contamination is at the heart of Defendants' Motion for Summary Judgment. Plaintiff has conveniently stated throughout this lawsuit that it does not recall receiving environmental reports noting findings of PCBs in "high concentrations" on its Property, or discussing findings of PCBs on its Property internally or with its consultants, regulators, or anyone else. Plaintiff's position of simply not remembering the PCB findings is conveniently supported by its lack of ESI.

Defendants are prejudiced by Plaintiff's unavailability of relevant ESI. *See Sekisui*, 945 F. Supp. 2d at 509 (where plaintiff destroyed "an unknowable amount of ESI," defendants' "inability to use the missing emails to attempt to prove" their defenses "may be as prejudicial to the [defendants] as depriving a party of access to a 'smoking gun' document."). If Defendants' summary judgment motion is denied, no amount of monetary sanctions alone can level the

playing field.  Defendants should not be forced to have to continue to spend significant costs conducting fact and expert discovery over the next several months to defend a case that has been brought and conducted by Plaintiff in this manner.

Further, sanctions for discovery misconduct are intended not only to punish the wrongdoer, but also to be sufficiently burdensome to deter such misconduct in our judicial system.  Under the circumstances, lesser sanctions for Plaintiff's spoliation of evidence would not be effective nor fair.  *See*, *e.g.*, *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 391 (M.D. Pa. 2011) (granting motion for default judgment given the spoliating parties' "unabashedly intentional destruction of relevant, irretrievable evidence[,]" and court explaining, "I am especially conscious of the deterrence value of harsh sanctions in cases like this where the crucial evidence exists in electronic form, and a party may destroy its opponent's case with the mere click of a button.").

### 3.    Plaintiff's Discovery Misconduct Began at Least 3 ½ Years Ago

Third, the duration of the period of Plaintiff's noncompliance with its discovery obligations warrants the sanction of dismissal.  Plaintiff anticipated this litigation as early as March 2010, *see* Ex. D, and filed suit on June 17, 2010.  Plaintiff's counsel advised Plaintiff of its preservation obligations on June 24, 2010.  Ex. F.  Plaintiff intentionally destroyed its back-up tapes and hard drives at the end of July 2010, but proceeded with the litigation, continually representing to Defendants and the Court that it had no recollection of learning about prior PCB findings on the Property and that it had conducted a thorough search of its documents, including ESI, in response to Defendants' discovery requests—despite the fact that Plaintiff produced relatively few e-mails, including only one e-mail from its President.

Moreover, for over three years, Plaintiff failed to tell all of its executives and key custodians about its preservation obligations, *i.e.*, the duty to preserve all potentially relevant evidence, including electronic documents. There is no excuse for such wanton, long-term disregard by Plaintiff of its preservation obligations in a lawsuit that it chose to commence.

        4.     <u>Plaintiff Was Advised Prior to Destroying Its ESI that Failure to Preserve Documents, Including ESI, Could Result in Dismissal and Monetary Sanctions</u>

Fourth, Plaintiff was warned in the June 2010 letter from its own counsel that failure to comply with its obligation to preserve all potentially relevant documents, specifically including ESI, could result in sanctions and even dismissal of this case. The letter stated that "it is absolutely necessary that you fully comply with this litigation hold as required by law. <u>Failure to do so could result in penalties against Hubbard-Hall, ranging from negative inferences at trial to dismissal and monetary sanctions.</u>" *Id.* at p. 4 (underline in original). Thus, Plaintiff was fully on notice of the potential consequences for failing to comply with its preservation obligations when, a month later, it intentionally destroyed approximately 100 back-up tapes and almost as many hard drives.

## V.    CONCLUSION

Although all of the factors discussed in Section IV(C) are not required to be met to warrant the sanction of dismissal, *SNET v. Global NAPS Inc.*, 624 F.3d 123, 144 (2d Cir. 2010), all of them are met in this case, which underscores that dismissal for Plaintiff's spoliation of evidence is proper and warranted. Default judgment is an appropriate sanction where a party has intentionally destroyed, and failed to take steps to preserve, potentially relevant electronic documents. *See, e.g., Aliki Foods, LLC v. Otter Valley Foods, Inc.*, 726 F. Supp. 2d 159, 178-80,

182 (D. Conn. 2010) (dismissing case with prejudice where plaintiff acted in bad faith and failed to produce documents and preserve computers and hard drives during the course of discovery).

In addition, monetary sanctions are also appropriate, given that Plaintiff's misconduct has forced Defendants to incur substantial costs preparing and filing this motion. *See Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 510 (S.D.N.Y. Aug. 15, 2013) (imposing sanctions for plaintiff's willful destruction of ESI, failure to timely implement a litigation hold, and failure to advise its IT vendor of such litigation hold for nearly six months—including monetary sanctions of costs and attorney's fees associated with bringing the motion for sanctions); *see also* Fed. R. Civ. P. 37(d)(3).   An award of sanctions for discovery misconduct should effectuate three purposes:  (1) to ensure a party will not benefit from its own failure to comply; (2) to serve as a specific deterrent; and (3) to provide a general deterrent in the particular case and litigation in general. *Robertson v. Doe*, 2008 U.S. Dist. LEXIS 47860, *18 (S.D.N.Y. 2008); *see also Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002).  In this case of spoliation, the award of sanctions, specifically dismissal and monetary sanctions, will serve these purposes. *See NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (emphasizing the important deterrent effect of extreme discovery sanctions); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 339 (D. Conn. 2009) ("The duty to preserve relevant evidence is fundamental to federal litigation.").

For the foregoing reasons, Defendants respectfully request that the Court enter an Order:

1)      Dismissing this case with prejudice as a sanction for Plaintiff's spoliation of electronically stored information;

2)      Grant Defendants an award of costs and attorney's fees it has expended to date as a result of Plaintiff's spoliation of evidence, including those related to the present Motion; and

3)      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**DEFENDANTS,**
**MONSANTO COMPANY, PHARMACIA**
**CORPORATION, PFIZER INC., AND**
**SOLUTIA INC.**

By: ___*/s/ Jeffrey J. White*_____
          Stephen E. Goldman (ct06224)
          E-mail: sgoldman@rc.com
          Jeffrey J. White (ct25781)
          E-mail: jwhite@rc.com
          Sorell E. Negro (ct29195)
          E-mail: snegro@rc.com
          ROBINSON & COLE LLP
          280 Trumbull Street
          Hartford, CT 06103-3597
          Telephone:  (860) 275-8237
          Facsimile:   (860) 275-8299

## **CERTIFICATION**

I hereby certify that on March 12, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____*/s/ Jeffrey J. White*_____
Jeffrey J. White

33