UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HUBBARD-HALL INC., | : | CIVIL ACTION NO. 3:13-cv-00104-RNC |
| Plaintiff, | : | |
| v. | : | |
| MONSANTO COMPANY, PHARMACIA CORPORATION, PFIZER INC., SOLUTIA INC., and JOHN DOES 1-20, | : | |
| Defendants. | : | APRIL 30, 2014 |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS**

This case turns on whether plaintiff Hubbard-Hall Inc. knew or reasonably should have known that it was harmed by PCB contamination on its Property before June 2008 (*i.e.*, two years before it filed the lawsuit).[1]  Plf.'s Opp. (Doc. 109) at 14-15.  Significantly, Plaintiff does not argue that the harm to its Property occurred after June 2008 and, thus, could not have been discovered beforehand.  Indeed, Plaintiff's theory of liability is that the PCBs manufactured by Old Monsanto were defective upon manufacture because they could migrate from paint to the soil.  Thus, according to Plaintiff's own allegations, the harm can be traced back to the 1950s when Plaintiff used PCB-containing paint on its Tank Farm Building.  Am. Compl. (Doc. 38) at ¶¶ 135-36, 152, 155.[2]

---

[1]   The alleged "damage complained of" is "the contamination of the Tank Farm Building and surrounding soil . . . ."  Doc. 109 at 14.

[2]   In fact, Plaintiff has argued that its CPLA claim is not barred by the statute of repose because the harm occurred during the product's useful safe life.  Throughout this lawsuit,

Accordingly, in order to survive summary judgment, Plaintiff has the daunting task of persuading this Court that a reasonable jury could find both of the following:

(1) Plaintiff was not put on notice that it was harmed by PCB contamination on its Property any time over a 54-year period (between 1954 to 2008); and

(2) Plaintiff, even with the exercise of due diligence, would not have discovered that it was harmed by PCB contamination during this 54-year period despite being repeatedly informed by regulatory authorities and environmental consultants of PCB contamination (including "at high concentration").

As shown by the undisputed evidence summarized below, no reasonable jury could reach either conclusion; the CPLA claim is therefore barred by the statute of limitations. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Throughout the entirety of this lawsuit, the position of Plaintiff Hubbard-Hall Inc., a corporation, has consistently been that it was not aware of PCB contamination on (or even PCBs mentioned in connection with) its Property prior to 2008. Doc. 109 at 15; White Aff., Ex. A, 9/30/13 30(b)(6) Dep. Tr. at 73-74 (not aware of anyone at Hubbard-Hall discussing PCBs on the Property prior to 2008); Doc. 85, Ex. C, 10/2/13 30(b)(6) Dep. Tr. at 98-99. When asked about the 1993 Weston Report, which reported findings of PCBs "at high concentration" in two soil samples from locations near the Tank Farm Building, the 1997 HRP Report that also reported

---

Plaintiff has maintained that the PCBs were defective from the outset, they were applied to the Tank Farm Building in the 1950s, and the harm occurred during the useful safe life of the product. *See* Doc. 38 at ¶¶ 134-36, 152, 155; Doc. 85, Ex. E at 3; Doc. 24 at 4-7; Doc. 50 at 21. In an effort to obfuscate that basic issue, Plaintiff argues that there is a dispute as to "whether there was ever any actual PCB contamination <u>reported</u> on the Property before the transformer spill in 2008." Doc. 109 at 34 (emphasis added). That is a different issue—namely, whether Plaintiff learned of the contamination; not whether PCBs were there in the first place.

2

these findings, the 2003 ALTA Report that also reported these findings and explained that they exceeded regulatory levels for residential areas, Plaintiff's corporate representatives and executives testified that they could not recall the PCB findings, were not focused on PCBs at the time, and "had other fish to fry." Doc. 85, Ex. B at 91-95; White Aff., Ex. B at 89, 160-61; White Aff., Ex. D at 196-97, 230. Indeed, one of its 30(b)(6) witnesses testified that Plaintiff Hubbard-Hall Inc.'s position is that it was not aware of PCBs on its Property prior to 2008. Significantly, the 30(b)(6) witness affirmed that Plaintiff is <u>not</u> claiming that it was aware of the PCB findings prior to 2008, but it had discounted or questioned those findings.[3]

In its Opposition, Plaintiff has now changed course. In the face of overwhelming evidence (the bulk of which came from Plaintiff's own files) that Plaintiff was told repeatedly over the course of 25 years by the DEP, an EPA contractor, and several different environmental consultants, that PCBs were found on its Property—and "at high concentration"—Plaintiff squarely contradicts its own 30(b)(6) witnesses' testimony that it was not aware of PCBs found before 2008 and that it never discussed prior PCB findings with anyone. Decades after receiving these reports, Plaintiff now—in April 2014—questions the validity of these PCB findings in order to suggest that it never received "final, final" confirmation of them, and suggests that there

---

[3] At her 30(b)(6) deposition on October 17, 2013, Kelly Meloy testified as follows:
Q. Okay. . . . Essentially, Hubbard-Hall's position is that it was not aware of PCB findings on its site prior to 2008?
A. That's my understanding of their position, as I learned from discussing it with them.
Q. Okay. **It is not their position that we knew about it, but we discounted the findings in some way?**
A. **Correct. I've never heard that to be the case**.
White Aff., Ex. E at 70-71 (emphasis added). Margaret Hart, who also served as a 30(b)(6) witness, also testified that she did not question the findings of PCBs that were identified in the 1993 Weston Report that Plaintiff now criticizes. White Aff., Ex. B at 112-13.

are disputed issues of material fact as to "the significance" of the pre-2008 PCB findings and "whether, in the exercise of reasonable care, Hubbard-Hall had any reason to be concerned about PCB contamination on the Property at any time before August 2008. . . ." Doc. 109 at 15.

Even leaving aside that Plaintiff cannot create a question of fact by contradicting the testimony of its own 30(b)(6) witnesses; *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572-73 (2d Cir. 1991); Plaintiff's newly manufactured position would essentially allow any party to evade the statute of limitations by ignoring evidence of harm for decades and then, when challenged in court, simply say that, in hindsight, it was not "satisfied" with the evidence, despite the fact that it never questioned or investigated the evidence at the time it was presented to it. As explained below, there are no genuine issues of material fact. Plaintiff admits, as it must, that it received reports of PCB findings in 1993 and again in 1997, 2003 and 2004. Plaintiff also does not challenge the notion that further investigation would have revealed the extent or source of the PCB contamination. As noted below, the case law in the Second Circuit and around the country establishes that Plaintiff was notified of the harm and, therefore, the statute of limitations has expired.

**I.   PLAINTIFF'S CPLA CLAIM IS TIME-BARRED BECAUSE PLAINTIFF WAS ON NOTICE THAT IT SUFFERED THE ALLEGED HARM BEFORE 2008**

There is no dispute that Plaintiff was on notice of PCB findings prior to 2008.[4] Doc. 116 at 5 (Plaintiff admitting "there are 'references' and 'mentions' of PCBs in both Hubbard-Hall's and ATLA's files, some of which contained unconfirmed reports of 'detections' of PCBs, and others of which refer to testing for PCBs in connection with environmental investigations on the

---

[4]   Plaintiff concedes that it received the 1993 Weston Report at the time it was completed. Doc. 109 at 19. Plaintiff's objection is predicated upon the argument that there are disputed facts "regarding the significance and effect" of the pre-2008 notifications. *Id.* at 15.

Property."). Plaintiff even produced a copy of a 1997 report from its files that had yellow highlighting on the sections that stated that PCBs had been found "at high concentration" and that the PCBs were not put there by Plaintiff. *See* Opening Brief (Doc. 85-1) at 13-14; Doc. 85, Exs. G & Q. Plaintiff also states that it could have determined prior to 2008 that Monsanto was a responsible party for the alleged PCB contamination. Doc. 109 at 30-31 (conceding that Plaintiff always knew that it did not manufacture, generate, or deal with PCBs) & 38 n.18.

Although several witnesses for Plaintiff provided self-serving testimony that they had "no recollection" of the various reports, communications, and statements contained in their corporate files, none of the witnesses denied that Hubbard-Hall received the reports, and at least its President, Chairman, and Environmental Compliance Manager read them at the time. *See*, *e.g.*, Doc. 85, Ex. N at 150-52 (when shown a 2004 DEP RCRA inspection report stating that the site was contaminated with PCBs, Plaintiff's former Environmental Compliance Manager testified that he remembered seeing the document, but he either "missed that particular sentence or, for some reason, didn't pay attention"). In addition, Plaintiff's President told the DEP in August 2000 that PCBs had previously been found on the Property. Doc. 85, Ex. T.

Ultimately, Plaintiff, as a corporation, was notified of the PCB contamination regardless of whether any individual employees or executives now have a recollection of that notification. *Helton v. AT&T Inc.*, 709 F.3d 343, 356-57 (4th Cir. 2013) ("corporate entities also have constructive knowledge of the contents of their records"; AT&T deemed to have knowledge of its records and documents under its control even if its employees did not look at them) (citing *Albert Lea Foundry Co. v. Iowa Sav. Bank of Marshalltown*, 21 F.2d 515, 518 (8th Cir. 1927); 5A FLETCHER CYCLOPEDIA OF CORPORATIONS § 2203 (2012)). If the law were otherwise, a

statute of limitations argument could easily be defeated by a corporation under a host of circumstances, such as if the relevant corporate witnesses left the company, died, simply had no recollection of damaging documents, or ignored key documents.  *See Dodds v. Cigna Sec., Inc.*, 841 F. Supp. 89, 94 (W.D.N.Y. 1992) (accrual of claim for fraud began when plaintiff received documents evidencing "the possibility of fraud"; statute of limitations does not await plaintiff's "leisurely discovery of the full details" of the alleged fraudulent conduct, and "<u>Plaintiff cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put [her] on inquiry notice</u>.  A plaintiff is not free to ignore pertinent documents even if she is not able to fully understand their meaning.") (internal quotation marks, citation omitted) (emphasis added); *see also Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (inquiry notice analysis "assumes knowledge of 'publicly available news articles and analyst's reports.'") (citation omitted).  Indeed, as one federal court noted in rejecting similar arguments:

> To hold otherwise would be to allow plaintiffs to manipulate the running of the limitations period by averting their eyes to wrongdoing for years or decades, delaying tests to confirm what they already believe and have reason to believe is true, and then saying they could not have sued earlier because they lacked 'solid information.'  The practical ramifications of that scenario are that statutes of limitations would be rendered meaningless.

*LaBauve v. Olin Corp.*, 231 F.R.D. 632, 660 n.59 (S.D. Ala. 2005); *New W. Urban Renewal Co. v. Viacom, Inc.*, 230 F. Supp. 2d 568, 573 (D.N.J. 2002) (same).

      Recognizing that there is undisputed evidence that Plaintiff was on notice of PCB findings, Plaintiff spends its brief trying to distort the law of statutes of limitations.  In essence, Plaintiff's argument is that it was not sufficiently on notice that it was harmed until it received so-called "confirmed" and "undisputed" test results finding PCBs in 2008.  Doc. 109 at 32.

Confirmation of contamination, and certainty of test results, is <u>not</u> required for a claim to accrue. *LaBauve*, 231 F.R.D. at 660 n.59 (a plaintiff does not need "solid information" of contamination for the claim to accrue); *see also Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 932 (6th Cir. 2004) (the "discovery rule does not permit a party to await certainty"). Courts have held that plaintiffs had sufficient knowledge of contamination for the claim to accrue where the plaintiff was notified of contamination or <u>potential contamination</u> that had not been undisputedly confirmed—pointing to far less evidence than what Plaintiff received over the course of 25 years reporting PCBs on its Property.  *See*, *e.g.*, *Highland Indus. Park, Inc. v. BEI Def. Sys. Co.*, 357 F.3d 794, 797 (8th Cir. 2004) (claims for contamination time-barred; plaintiff had actual knowledge of contamination when it received its <u>first</u> environmental report, stating "that the contaminants in its groundwater exceeded the maximum contaminant levels" established by EPA); *Estate of Maglione v. Gulf Oil Corp.*, 2007 N.J. Super. Unpub. LEXIS 1059, *3-4, *20-23 (N.J. Super. Ct. App. Div. Feb. 22, 2007) (plaintiff had sufficient knowledge of the harm for statute of limitations to run when environmental consultant notified plaintiff that "additional tests or corrective measures <u>would likely be needed</u>") (emphasis added).

As noted above, Plaintiff's theory is that its Property was damaged well before 2008. Even if Plaintiff argues now that the findings and conclusions of the DEP, Weston, HRP, and Malcolm Pirnie are all suspect, it cannot dispute that it was put on notice of at least potential PCB contamination well before 2008, which is sufficient for a claim to accrue.

Furthermore, even if the Court were to apply Plaintiff's misguided standard of "confirmation" (which is not supported by case law and is contrary to Plaintiff's corporate position that it was not aware of, and did not discuss, PCBs prior to 2008), summary judgment

would still be warranted.  In 2000, Plaintiff's President told the DEP that PCBs had been found on its Property previously and promised to remediate.  Doc. 85, Ex. T.  In 2003, Plaintiff was told by ALTA, its environmental consultant, that, due to PCBs found in two locations on its Property, "remediation or other action" was warranted.  Doc. 85, Ex. AA, 2003 ALTA Report at 27-28.  Thus, at least by 2003, Plaintiff was informed that it would have to remediate and further investigate certain areas of its Property, and would have to place a deed restriction on its Property, <u>because</u> PCBs were found on the site.  Regardless of what ALTA may say now in 2014,[5] the 2003 ALTA Report did not conclude that no PCBs were on the Property or that Plaintiff did not have to worry about PCBs.  To the contrary, Plaintiff was told that it would need to incur costs and a deed restriction as a result of PCBs found on the Property, both of which are elements of Plaintiff's damages in this case.  *Id.* at 27-29; *see* Doc. 38 at 1-2, 27; Doc. 85-1 at 34-35.  In fact, as further evidence of the significance of these findings, ALTA's conclusions were even sent to Plaintiff's insurance company, which had issued Hubbard-Hall "pollution insurance coverage."  Doc. 85, Ex. EE; Hart Aff. (Doc. 106) at ¶ 29.

Therefore, even if "confirmation" of the test results were the standard (which it is not), the undisputed material facts still establish that Plaintiff was told in 2003 that it was harmed because PCBs were found on its Property.  It is therefore beyond dispute that Plaintiff's claim for property damage due to PCBs accrued at that time, if it had not already accrued earlier.

---

[5]   Although Ms. Meloy provided an affidavit with Plaintiff's Opposition stating that she concluded that no PCBs were on the site, she testified that, in 2003, ALTA recommended further investigation including "additional confirmation testing to rule out PCBs in those two areas," and that she had no concerns about the quality of the 2003 report or ALTA's work for Plaintiff. White Aff., Ex. E at 18-23, 39-40, 66-67, 72-73.  A party cannot create a material issue of fact by submitting an affidavit that contradicts previously sworn statements.  *Setevage v. Dep't of Homeland Sec.*, 539 F. App'x 11, *13 (2d Cir. 2013); *Newport Elecs., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 220 (D. Conn. 2001) (Hall, J.) (striking such statements).

## II.      PLAINTIFF'S CPLA CLAIM IS TIME-BARRED BECAUSE IT REASONABLY SHOULD HAVE KNOWN THAT IT WAS ALLEGEDLY HARMED PRIOR TO JUNE 2008

Alternatively, Hubbard-Hall's CPLA claim is barred by the statute of limitations because it reasonably should have known of the actionable harm before June 2008.  Even though Plaintiff spends a great deal of its brief arguing about whether there was contamination actually discovered on the Property prior to 2008, it concedes that the analysis hinges upon only whether it "<u>ever</u> reasonably should have known that there **could be** PCB contamination" regardless of the source.  Doc. 109 at 40 (emphasis added); *see also DVL, Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579, 585-86, 599 (N.D.N.Y. 2010) (statute of limitations began to run when preliminary site assessment alerted party to <u>possible</u> contamination); *SPS Limited P'ship, LLLP v. Severstal Sparrows Point, LLC*, 808 F. Supp. 2d 794, 814-15 (D. Md. 2011) (plaintiff had sufficient notice of injury due to contamination where a Phase I Environmental Site Assessment stated that contamination from other areas "<u>could be impacting</u>" the site) (emphasis added).  The question presented by the instant motion is whether a reasonable jury could conclude that Plaintiff was not "put on notice of its injury and that it should determine whether legally actionable conduct was involved."  *Vector-Springfield Props., Ltd. v. Cent. Ill. Light Co.*, 108 F.3d 806, 810 (7th Cir. 1997); *see also Mountaindale Condo. Ass'n v. Zappone*, 757 A.2d 608, 615, 618 (Conn. App. Ct. 2000) (affirming summary judgment where "the means of knowledge existed and the circumstances were such as to put a plaintiff of ordinary prudence on inquiry").

For Plaintiff to defeat summary judgment, the Court would have to find that a reasonable jury could conclude that Plaintiff, even with the exercise of due diligence, would not have discovered any harm from PCB contamination during a 50-plus year period despite being repeatedly informed by regulatory authorities and consultants of PCB contamination (including

9

"at high concentration").  Plaintiff, a sophisticated chemical company, does not dispute, as its corporate executives testified, that as early as the 1980s, it knew that: (1) PCBs were banned; (2) PCBs were a "bad agent" and allegedly carcinogenic; (3) PCB clean-up is expensive; and (4) the company almost went out of business due to a PCB Superfund clean-up in Massachusetts.  Doc. 85, Ex. B at 65-66, 160-61, 195; Doc. 85, Ex. C at 29-31, 61-62; Doc. 85, Ex. D at 27-28; Doc. 85, Ex. N at 47-48, 54-62.

Nonetheless, Plaintiff argues that its conduct was reasonable and rests its entire argument on its actions during the 2000s as if its undisputed inaction before that time is somehow irrelevant for purposes of whether the statute of limitations began to run.  Significantly, Plaintiff ignores its failure to investigate PCB findings from as early as 1982 and also ignores the fact that it was put on notice of possible contamination at several different times after that.

For example, Plaintiff's President, Andrew Skipp, testified that he was aware of the PCB findings from 1982 and that he probably became of aware of the specific DEP report in 1982. Doc. 85, Ex. D at 80-82; *see also Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (presuming "knowledge of 'publicly available news articles and analyst's reports.'") (citation omitted).  Despite this, Hubbard-Hall did not investigate the source or extent of the reported PCB findings.  Doc. 85, Ex. B at 210-13.  From 1982 to 1993, nothing was done, and Plaintiff claims it was not put on notice that would justify investigating further.  Doc. 109 at 17.

In 1993, Weston provided its test results of PCB findings.  Again, Plaintiff did nothing in response, as confirmed by Plaintiff's 30(b)(6) witness:

> Q. Okay. So, the Weston report contains test results indicating that the site was contaminated with PCBs, right?
> A. **<u>Yes, there was PCB contamination on the site</u>**.

> Q. And is it fair to say that as far as you know, no action was taken to either remediate or follow up – let's just start first, was there any action taken, as a result of the Weston report, to remediate the PCBs found on the site?
> A. **No**.

Doc. 85, Ex. C at 97-98 (emphasis added).  Again, Plaintiff claims that a reasonable jury could conclude that it was not put on notice of possible PCB contamination that would at least justify further investigation.  Doc. 109 at 36-37.

In 1997, HRP provided a report that repeated the earlier PCB findings and included the 1982 test results.  Again, Plaintiff concedes that it did not take any action in response; *see* Doc. 109 at 23; *see generally* Doc. 85-1 at 14; but claims that a reasonable jury could conclude that it was not put on notice that it had suffered possible harm even though its own executives highlighted those sections of the report.  Doc. 85, Ex. G at 4, 32-33; Doc. 85, Ex. Q at 2.  Thus, from 1982 to 2000, there were multiple points when the statute of limitations was triggered.  These notifications and acknowledgements of PCB findings continued through 2006, including a 2000 letter from Plaintiff to DEP stating that PCBs were a "site-specific contaminant of concern."  Doc. 85, Ex. T (submitted in response to a July 19, 2000 letter from DEP stating that the environmental assessment of Plaintiff's site "thus far indicates that this site may warrant cleanup under the federal Superfund program."  Doc. 85, Ex. S.).  Indeed, when shown the 2004 DEP RCRA report reporting PCB contamination, Plaintiff's former environmental manager admitted that he "**should have known**" about the polychlorinated biphenyl."  Doc. 85, Ex. N at 151 (emphasis added).

In an effort to sidestep this evidence, Plaintiff offers a critique of the various test results and reports that noted findings of PCBs, including reports dated as late as 2006.  Plaintiff even attaches an affidavit from its consultant, Kelly Meloy, offering a technical analysis of the alleged

11

shortcomings of various test results from the DEP in 1982, Weston in 1993, and Malcolm Pirnie in 2006. The issue for this Court, however, is not whether it can be shown that there is absolute certainty that there was actual contamination on the Property. *See supra* at 7 & 9-10.[6]

Further, according to Plaintiff's 30(b)(6) witnesses, none of these critiques or criticisms were <u>ever</u> shared with Plaintiff prior to 2008, and, thus, they are irrelevant for assessing Plaintiff's conduct. White Aff., Ex. E at 70-71.[7] Indeed, while Plaintiff combs through dozens of documents stating or reporting that PCBs were found on its Property, attempting to discount them one at a time, it does not point to <u>any</u> documents in the record, other than the April 2014 affidavit by Ms. Meloy, stating that Plaintiff had no PCBs on its Property (an opinion she never shared with Plaintiff). *See generally* Doc. 109.

Plaintiff also tries to create a factual dispute by having its consultant disavow a report that shows Plaintiff suffered the alleged damage in 2003. Plaintiff claims that the 2003 ALTA

---

[6] The fact that ALTA tested for PCBs in certain soil samples in 2000-2001 demonstrates that it did not reject the Weston findings outright and that Plaintiff was at least aware of the possibility of PCB contamination, which is sufficient for a claim to accrue. *See SPS Limited P'ship, LLLP v. Severstal Sparrows Point, LLC*, 808 F. Supp. 2d 794, 814-15 (D. Md. 2011) (plaintiff had sufficient notice of injury due to contamination where a Phase I Environmental Site Assessment stated that contamination from other areas "could be impacting" the site); *New W. Urban Renewal Co. v. Viacom, Inc.*, 230 F. Supp. 2d 568, 573 (D.N.J. 2002) ("tolling under the discovery rule is not dependent on whether actual sampling results have been taken, but whether there are enough indications of environmental contamination to put the plaintiff on reasonable notice of a need to investigate further[;]" "[c]ertainty is not required.") (citation omitted).

[7] Ironically, the type of analysis undertaken by Plaintiff and its consultant now is the very type of analysis that a reasonable plaintiff would have undertaken many years ago if it was acting with diligence. Indeed, John Lannan and John Paul, two former environmental compliance managers of Hubbard-Hall, stated that had they known of the PCB findings, they would have taken steps to further investigate. Doc. 85, Ex. O at 31-32; Ex. N at 137-39. Even if Ms. Meloy had mistakenly told Plaintiff that there were no PCBs on its Property – of which there is no evidence – a plaintiff's reliance on a consultant's inaccurate advice does not toll the statute of limitations. *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 108-09 (Cal. Ct. App. 2009).

report noted that limited testing did not find PCBs, and thus, the 1982 DEP Report, 1993 Weston Report, and 1997 HRP Report were rendered "ineffective." *Id.* at 31.  Even leaving aside that the statute of limitations was triggered well before 2003 and none of these issues were ever discussed with Plaintiff, the ALTA Report actually concluded (despite this testing) that PCBs exceeding "the DEP default soil remediation standards were noted in the following areas, which warrant remediation or other action . . . . : . . . [s]hallow soil just southwest of the former South Loading Dock was found to be contaminated with PAHs, pesticides and PCBs," and "[s]hallow soil (8 to 12 in.) near the northwesterly corner of the building was found to be contaminated with PCBs[.]"  Doc. 85, Ex. AA at 27-28.  The report also recommended "[a]dditional Phase III investigations into the degree and extent of soil and groundwater contamination" in these areas specifically.  *Id.* at 29.  These investigations and further testing for PCBs were not done, exemplifying Plaintiff's lack of interest in the topic until it was caught by the EPA in 2008.

As a final salvo, Plaintiff cites two cases in support of its argument that it should not have reasonably known it was harmed prior to 2008.  Doc. 109 at 35, 40.  Neither of these cases involved circumstances in which a party received specific reports of contamination on the plaintiff's property.  *See Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 194, 205-06 (2d Cir. 2002) (the only evidence showing plaintiffs may have known of the contamination were "government and media reports and public controversy over the health hazards posed by the Landfill" to the vicinity generally, not to plaintiffs' properties specifically, and certainly not environmental reports of findings of contamination on plaintiffs' property); *Collins v. Olin Corp.*, 2009 U.S. Dist. LEXIS 5444, at *20 (D. Conn. 2009) (the only evidence of possible knowledge of contamination before May 2001 was "publicity, public meetings, and

communications within and originating from the DEP," and not test results or findings specific to plaintiff's property). In fact, *Collins v. Olin Corp.* found that it could have been reasonable for a plaintiff not to know it was harmed <u>before</u> receiving test results from EPA's consultants—not afterward. *Id.* at *22-23 ("it could have been reasonable for any resident of the Newhall Community to suspend judgment, as a result of the involvement of the EPA, <u>until</u> receiving the results of tests run by the agencies' experts.") (emphasis added). Therefore, according to *Collins*, Plaintiff reasonably should have known it was harmed when it received the Weston test results in 1993, as a result of EPA's investigations. Neither case law nor logic supports that such reports and test results are "mere suspicion" and, therefore, insufficient for a claim to accrue.

### III.   DEFENDANTS' EXHIBITS ARE AUTHENTIC AND ADMISSIBLE

Plaintiff spends ten pages attacking the evidentiary basis of every one of the exhibits to Defendants' Motion for Summary Judgment, Doc. 109 at 4-13—the majority of which came from Plaintiff's files—and insists that Defendants must authenticate each exhibit. *Id.* at 7-8. Oddly enough, these objections are made while Plaintiff relies on many of the same exhibits in support of its Opposition, which Plaintiff expressly authenticates in its own affidavit from counsel. Doc. 110 and Exs. A-CC. Although a party should only object to exhibits to a motion for summary judgment if they "<u>cannot</u> be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2) (emphasis added), and while respectfully acknowledging that this Court "does not require lawyer affidavits and believes they should not be filed unless necessary to prove a point within the lawyer's exclusive knowledge," Defendants file herewith an Affidavit of Jeffrey J. White, Esq. ("White Aff."), setting forth the bases for authenticating

each exhibit and addressing Plaintiff's objections on hearsay grounds to avoid any confusion that these exhibits are properly before the Court.[8]

While all of Defendants' exhibits can be shown to be admissible (or at a minimum, can be relied upon by the Court to establish notice irrespective of whether they are deemed to be true, *see United States v. Dupree*, 706 F.3d 131, 136-38 (2d Cir. 2013); *see also* White Aff.), not all are necessary for Defendants to prevail on summary judgment. The 2003 ALTA Report, which Mr. Paul authenticated at his deposition and which came from Plaintiff's files, shows that Plaintiff was on notice that it was harmed by findings of PCBs on the site. White Aff., Ex. D at 217-18. In addition, the August 8, 2000 letter by Andrew Skipp was authenticated by Mr. Skipp at his deposition and speaks for itself, stating that Hubbard-Hall knew that PCBs were found on the Property and formally committed to doing further investigation and remediation of PCBs. Doc. 85, Ex. T, Ex. D at 187. These documents show that Plaintiff knew at least by 2003 that PCBs were found on its Property and it would incur damages in the form of investigatory and remediation costs, and a deed restriction, as a result.

---

[8]  Defendants provided only relevant excerpts of the reports and transcripts, but could provide copies of all exhibits in completion if the Court would like. Plaintiff also objects to Exhibits I-L, relating to the Re-Solve Superfund Site, to which Plaintiff transported hazardous wastes and was the largest Potentially Responsible Party, and which site was significantly contaminated with PCBs, as not relevant. Doc. 109 at 8. Plaintiff also objects, as not relevant, to its 1986 hazardous waste manifest showing that waste it had shipped was rejected by a reclamation facility, which indicated: "Will not accept PCB" (Doc. 85, Ex. M). Doc. 109 at 8. These exhibits are relevant because they pertain to Plaintiff's sophisticated knowledge of PCBs, which is relevant to whether its failure to investigate further and bring a claim for damages until 2010 was reasonable. They also show that Plaintiff knew that PCBs were heavily regulated and highly expensive to remediate, which is a plausible motivation to look the other way.

**DEFENDANTS,
MONSANTO COMPANY,
PHARMACIA CORPORATION, PFIZER INC.,
AND SOLUTIA INC.**


By:  _/s/ Jeffrey J. White_____
    Stephen E. Goldman (ct06224)
    E-mail: sgoldman@rc.com
    Jeffrey J. White (ct25781)
    E-mail: jwhite@rc.com
    Sorell E. Negro (ct29195)
    E-mail: snegro@rc.com
    ROBINSON & COLE LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Telephone:  (860) 275-8237
    Facsimile:   (860) 275-8299

## CERTIFICATION

I hereby certify that on April 30, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                                                  */s/ Jeffrey J. White*
                                                                                  Jeffrey J. White